THE PLANTERS'. MUTUAL INSURANCE COMPANY OF
WASHINGTON COUNTY *vs.* THOMAS DEFORD, *et al.*,
trading as DEFORD & CO.

*Evidence : Parol testimony admissible to prove a Collateral fact ;
and to determine the subject-matter of a Contract—Insurance :
Waiver of defects in Preliminary proofs—Errors in, and failure
to correct, Preliminary proofs, where not fraudulent, do not
Forfeit policy—Effect of breach of Warranty in a Policy, where
attributable to Agent of assurer—Prayers : Not to assume one
of two possible interpretations of a written instrument.*

On the 6th of May, 1871, the P. Mut. Ins. Co. issued to D. & Co. a policy of
insurance on a tannery, and stock of hides, &c. The policy provided that
any subsequent insurance of the property by D. & Co. would render it null
and void. The property having been burned on 30th June, 1871, suit was
brought on the policy. At the trial, a policy for $5000, issued May 2nd,
1871, by the M. F. Ins. Co. to D. & Co. on stock of hides and leather, was
offered in evidence. On it was endorsed " 1871, June 3. After this date
this policy covers $2500 on stock and $2500 on building." The plaintiffs
offered to prove that the policy was, by a mistake of the Clerk of the M. F.
Ins. Co. filled up for $5000 on stock, instead of $2500 on stock and $2500 on
the building as applied for; and that the error was not discovered until
3rd June, when the Company made the endorsement. HELD :

That the effect of the evidence offered was not to contradict or vary the terms
of the policy upon which the suit was brought, but to prove a collateral
fact, and that it was therefore admissible.

The By-Laws of an Insurance Company provided in case of loss by fire, that
the insured should give notice thereof in thirty days, and should deliver a
particular account thereof to the secretary, verified by affidavit of the
insured or his agent. In this case the loss occurred June 30th, 1871. The
proof of loss was made out, verified by the affidavit of three disinterested
persons, and furnished the Company on the 15th July following. A corres-
pondence in regard to the adjustment of the loss, was carried on between the
insured and the Company from July 15th to October 24th. Nothing was
said in this correspondence in regard to the defect in the preliminary proofs,

the Company placing its refusal to pay on the grounds of subsequent insurance and over-estimate of loss. HELD:

That the Company waived its right to object to the proofs as defective.

On loss of a tannery by fire, preliminary proofs were furnished to the Insurance Company, in which there was the following statement of value, "Stock in tannery, hides and leather, $56,500." HELD:

That the statement being susceptible of two interpretations, a prayer, which assumes that it referred exclusively to hides and leather, and not to other stock properly belonging to the tannery, was properly rejected.

On the loss of a tannery by fire, sworn preliminary proofs were furnished to the Insurance Company, in which the number of hides destroyed and injured was stated to be $388\frac{1}{2}$ more than, on testimony, were found to be in the tannery. The By-Laws of the Company provided that the policy should be forfeited by fraud or false swearing. HELD:

That if the statement was a mistake, and the insured failed to make a correction of the error without intention to defraud, he did not by such failure forfeit the policy.

D. & Co. applied to the P. Mut. Ins. Co. for a policy of insurance on a tannery. In their written application they stated, "We propose an insurance of $3000 on the aforesaid property, in addition to $4000 on the same in City Companies. . . . . We propose an insurance of $1000 on bark in addition to $500 now on same." On suit on the policy, it appeared that there was at the time of the application no insurance on the interest of D. & Co , but that there was an insurance of $3000 on the property in the names of D. & A., as Trustees, who had a lien on it for unpaid purchase money, and one for $500 in their own names on the bark. HELD:

That parol testimony was admissible to determine whether the interest of D. & Co., or that of D. & A. was the subject-matter referred to in the application, as insured.

*Semble.* Whenever a breach of warranty or representation by a person insured can fairly be attributed to the fault of the agent of the Insurance Company, parol testimony is admissible to show the fault of the agent, and the Company will not be allowed to set up such breach as a defence to an action on the policy.

APPEAL from the Circuit Court for Washington County.

A statement of the case will be found in the opinion of the Court.

At the trial of the cause in the Court below the plaintiffs offered the following prayers, which the Court, (PEARRE, J.,) granted:

1. If the jury shall find from the evidence that the plaintiffs, before the 17th day of July, 1871, furnished to the defendant the preliminary proof of loss by fire of the 30th of June, 1871, offered in evidence, and that the defendant retained said proof of loss, and made to the plaintiffs no objection to the same on the ground of any formal defect therein, and that said defendant did not, previous to the 17th day of October, 1871, make to the plaintiffs any denial of the defendant's liability for any loss on the policy offered in evidence, and that the letters of the plaintiffs and of Geo. W. Pole, dated between the first day of July and the last of October, 1871, and read in evidence, passed between said plaintiffs and the said Pole, as agent of the defendant; and if they shall further find, that the defendant sent an agent or agents to the Bottle Run Tannery, on or about the 16th day of August, 1871, to examine and ascertain the amount of the plaintiffs' loss by said fire, then the defendant cannot now object to any formal defect in said preliminary proof under the conditions annexed to the said policy.

2. If the jury shall believe from the evidence, that before the 2nd of May, 1871, Thomas Deford, one of the plaintiffs, and the Union Fire Insurance Company of Baltimore, contracted for an insurance in said Company of $2,500 on stock of hides and leather in process of tanning, and $2,500 on the building at Bottle Run Tannery, and that by mistake the clerk of said Company filled up the policy offered in evidence for an insurance of $5,000 on the stock alone, and that subsequently, on the 3rd of June, 1871, the memorandum of that date, signed by Otis Spear, secretary of said Company, was written on the face of said policy in order to rectify the same, and for the purpose of expressing the real contract made as afore-

said before the 2nd day of May, 1871, then the insurance in said policy of $2500 on the building must be considered as made previous to the insurance made by the defendant in the policy of May 6th, 1871, on which the present action is brought.

3. If the jury shall believe from the evidence that the paper signed by Shields, Topper and Smouse was honestly believed by the plaintiffs, when the same was made out and sent to the defendant, to contain a correct statement of the amount of property covered by the insurance, and at the place of and damaged by the fire, and a fair and *bona fide* estimate of the loss thereon occasioned by the fire, so far as such loss could be ascertained by them at the time, then the fact (if the jury shall find such fact from the evidence) that the number of hides actually at the Bottle Run Tannery, at the time of the fire, was less than that contained in the statement of said paper, cannot defeat the plaintiffs' right to recover for the actual loss sustained by them.

The defendant offered the following prayers, which the Court rejected, except the first, fourth, fifth and tenth, which were conceded by the plaintiffs, and the third, which was granted with a modification :

1. If the jury shall find from the evidence in the cause the sending by the defendant to George W. Pole, the treasurer of the defendant, of the letter of July 15th, 1871, and the paper signed and sworn to by Smouse, Topper and Shields, and that the plaintiffs knowingly stated in the said paper a greater quantity of hides or sides as being at the tannery when the fire occurred than had actually been received there, and that the said paper was not honestly believed by the plaintiffs at the time the same was made out and when sent to the said Pole, to contain a correct statement of the amount of the hides or sides covered by the insurance and at the place of, and lost or damaged by the fire, and a fair and *bona fide* esti-

mate of the loss thereon occasioned by such fire, so far as such loss could be ascertained by them at the time, then the plaintiffs are not entitled to recover, even if the jury should believe that in fact the loss of the plaintiffs exceeded the insurance.

2. If the jury shall find from the evidence that the plaintiffs furnished George W. Pole, the treasurer of the defendant, the paper in the handwriting of the plaintiff, Thomas Deford, in which occur the words following: "Hides and leather stock in tannery, 56,500.00 dollars, belonging to Deford & Co.," such words refer to the stock of hides and leather, and if they find that the plaintiffs knowingly stated in said paper a greater quantity of hides and leather as being on hand at the tannery at the time of the fire than was actually there at the time, and that said statement was not honestly believed by the plaintiffs or the said Thomas Deford when the same was made out, and sent to said Pole, to contain a correct statement of the stock of hides and leather in the tannery at that time, then their verdict should be for the defendant, even although they should think that the plaintiffs have sustained loss to the amount of the insurance.

3. If the jury shall find the sending by the plaintiffs to George W. Pole, treasurer of the defendant, of the paper signed by Smouse, Topper and Shields, and that by said paper a greater quantity of hides or sides was stated to be at the tannery at the time of the fire than was then actually there; and shall further find that the plaintiffs believed the said statement to be correct at the time the same was sent, but that they afterwards and before the writing of the letter from them to said Pole, dated 30th September, 1871, discovered the incorrectness of such statement, and that they did not correct the same, then the plaintiffs cannot recover. (Modified by the Court as follows :)

"Provided the plaintiffs did not make such correction of the number of hides or sides, knowing the number of

the hides or sides therein stated, and knowing the same to be incorrectly stated therein with intent to defraud the defendant."

4. If the jury find that there has been any fraud or intentional false swearing by the plaintiffs, or any of them, with respect to their claims against the defendant, then the verdict should be for the defendant.

5. That the law imposed upon the plaintiffs the obligation to take care of the damaged stock after the fire, and they could not have surrendered the said stock to the defendant.

6. If the jury shall find that the application offered in evidence was written by George W. Pole, the treasurer of the defendant, and was, on the 24th of April, 1871, sent by him to the plaintiffs, at Baltimore, to be examined and executed by the plaintiffs, and that the same was so signed by the plaintiffs, at Baltimore, and returned by mail to said Pole, at Hagerstown, on or about the 2nd day of May, 1871, and that the policy offered in evidence was thereupon issued to the plaintiffs; and shall further find that there was not an insurance of four thousand dollars on the interest of Deford & Co., the plaintiffs, in the tannery building, and an insurance of at least five hundred dollars upon their interest in the bark mentioned in said policy, then the plaintiffs cannot recover, and an insurance of the interest of the trustees of Jones is not such an insurance as can be considered.

7. That the proofs of loss furnished by the plaintiffs to the defendant are insufficient, and there is no sufficient evidence of any waiver by the defendant of the requirements of the policy with regard to said proofs.

8. If the jury shall find that Topper and Shields were laborers at the plaintiffs' tannery, and that Smouse was a farmer or mechanic, residing in the neighborhood of the tannery, and not an agent of the plaintiffs, and that the defendant had no notice or knowledge that the said

Topper, Shields or Smouse were not agents of the plaintiffs, then the defendant cannot be regarded as having waived the defects in the proofs of loss, arising out of the fact that the said proofs are not signed by the plaintiffs or some agent of the plaintiffs, and the plaintiffs cannot recover.

9. If the jury shall find from the evidence in the cause the facts set forth in the preceding prayer of the defendant, and shall further find the issuing to the plaintiffs by the Union Insurance Co. of Baltimore of the policy offered in evidence, and the making of the endorsement on the same, at and under date of the third day of June, 1871, at the instance of the plaintiffs, then their verdict should be for the defendant.

10. If the jury shall find from the evidence in the cause that the plaintiffs furnished to George W. Pole, the treasurer of the defendant, on or about the 15th of July, 1871, as part of the proofs of loss, the paper in the handwriting of the plaintiff, Thomas Deford, on which occurs the words following: "Hides and leather, stock in tannery, 56,500 dollars, belonging to Deford & Co.," and that the plaintiffs knowingly stated in the said paper a greater amount of stock as being on hand at the tannery, at the time of the fire, than was then actually there, and that said statement was not honestly believed by the plaintiffs or the said Deford to be correct, then their verdict must be for the defendant, although they should think that the loss of the plaintiffs on building and stock exceeded the insurance on the same.

The defendant offered an eleventh prayer which was rejected by the Court, but it does not appear in the record. The defendant excepted to the granting of the plaintiffs' prayers, to the rejection of its second, sixth, seventh, eight, ninth and eleventh prayers, and to the modification of its third prayer. A verdict for $5346.66⅔ was rendered for the plaintiffs, and judgment was entered accordingly. The defendant appealed.

Planters' Mutual Ins. Co. of Wash. Co. vs. Deford, et al.

The cause was argued before BARTOL, C. J., STEWART, BRENT, BOWIE, MILLER and ROBINSON, J.

*H. Kyd Douglas* and *Wm. A. Fisher*, for the appellant.

The evidence offered under the second and third exceptions should have been excluded. The effect of the evidence was to vary by parol a written contract between the plaintiffs and the Union Insurance Company. If a suit had been brought at law by the plaintiffs against the Union Insurance Company, such evidence would have been inadmissible, and it should be more so in a suit against the appellant, which had the right to a full disclosure as to all insurances enforcible *at law.* The second prayer of the plaintiffs presents the same proposition as that involved in the admission of the evidence. *Henderson vs. Mayhew,* 2 *Gill,* 409; *Alderson vs. Ames & Day,* 6 *Md.,* 52; *Anderson vs. Tydings,* 8 *Md.,* 440.

The second prayer of the appellant presents a proposition which is unobjectionable. The Court is to construe the meaning intended by the parties to be given to the paper mentioned in the prayer, and it is clear that it was the stock of hides and leather which was stated to amount to $56,500. The *bona fides* of such statement should have been submitted to the jury.

Although a statement, untrue in fact, may have been innocently made, it cannot be innocently reiterated after the mistake has been discovered. The modification of the appellant's third prayer by the Court was unnecessary and only tended to confuse and bewilder the jury. *Neptune Ins. Co. vs. Robinson,* 11 *G. & J.,* 256; *Campbell vs. Charter Oak Ins. Co.,* 10 *Allen,* 213, 218–9; *Kerr on Fraud,* 24, 74.

The sixth prayer asserts that as the application stated that there was an insurance of $4000 on the interest of Deford & Co. in the building, and $500 on bark, at the time the application was made, and as no such insurance

existed, the policy was void. The application is referred to and made part of the policy, and has the operation of a warranty. *Kennedy vs. St. Lawrence Co. Mutual Ins. Co.*, 10 *Barb.*, 285 ; *Flanders on Insurance, secs.* 210–11 ; *Burritt vs. Saratoga Ins. Co.*, 5 *Hill*, 188 ; *Gahagan vs. Union Ins. Co.*, 43 *N. H.*, 176 ; *Egan vs. Ins. Co.*, 5 *Denio*, 326 ; *Philbrooke vs. New England Ins. Co.*, 37 *Me.*, 137 ; *Jennings vs. Chenango Ins. Co.*, 2 *Denio*, 76.

It must therefore be literally complied with. *Augusta Ins. Co. vs. Abbott*, 12 *Md.*, 348.

In order to escape from the operation of these principles the plaintiffs rely upon the evidence of B. F. Deford that in April, ten days prior to the time when the plaintiffs signed, sealed and forwarded the application, he explained to Mr. Pole that the insurance alluded to was on the interest of the trustees of Jones, and claim that the appellant is estopped from relying upon the breach of warranty. Such course, if sanctioned, would strike a fatal blow at the security of all writings, and is contrary to the rulings of the Courts in Maryland, and to the best considered cases elsewhere. *Wilson vs. Boyce*, 32 *Md.*, 122 ; *National Ins. Co. vs. Crane*, 16 *Md.*, 260 ; *Phillips Ins., secs.* 66 *and* 116 ; *Weston vs. Emes*, 1 *Taunton*, 115 ; *Flinn vs. Tobin*, 1 *Moody & Malk.*, 367 ; *Higginson vs. Dall*, 13 *Mass.*, 96 ; *Whitney vs. Haven*, 13 *Mass.*, 172 ; *Wiggin vs. Boardman*, 14 *Mass.*, 12 ; *Atherton vs. Brown*, 14 *Mass.*, 152 ; *Vandervoort vs. Smith*, 2 *Caines*, 154 ; *Cheriot vs. Barker*, 2 *Johns.*, 347 ; *Jennings vs. Chenango Ins. Co.*, 2 *Denio*, 76 ; *Tibbets vs. Hannibal Ins. Co.*, 3 *Allen*, 569 ; *Graves vs. The Boston M. I. Co.*, 2 *Cranch*, 442–4 ; *Alston vs. Mechanics' Mut. Ins. Co.*, 4 *Hill*, 340–1 ; *Angell on Ins., secs.* 20 *to* 23 ; *Bliss on Life Ins., secs.* 80 *and* 81 ; *Draper vs. Charter Oak Co.*, 2 *Allen*, 569 ; *Plumb vs. Cataraugus Co.*, 18 *N. Y.*, on which all the other cases of the appellees are based, was decided by a bare majority, the three best Judges dissenting. See also

their opinion, delivered by J. STRONG, in the case of *Brown vs. Cataraugus Co.*, 18 *N. Y.*, 389.

The danger of the application of estoppel is more apparent as no Court of Equity could, on the conflicting evidence in the record, reform the contract so as to make the application allude to insurance on the trustee's interest. 2 *Cranch*, 442–4; *Nat. Fire Ins. Co. vs. Crane*, 16 *Md.*, 270.

The misrepresentation and breach of warranty as to part, avoids the policy with regard to all its subjects. *Assum vs. Insurance Co.*, 5 *Md.*, 165.

There was no sufficient evidence of waiver of the defects in the preliminary proof. The condition required an affidavit by the assured or their agent, and it was not disclosed until the trial that neither Tupper, Shields nor Smouse was an agent.

There can be no waiver in the absence of knowledge of the defect. *Reynolds vs. Mut. Ins. Co.*, 34 *Md.*, 289.

*Thomas Donaldson* and *S. Teackle Wallis*, for the appellees.

The second and third exceptions were to the admission of the proof on the part of Thomas Deford, and Otis Spear, Secretary of the Union Insurance Company, that the contract for insurance between the appellees and that Company, made before May 2nd, 1871, was for $2500 on stock, and $2500 on the buildings; but that by a mistake of that Company's clerk, the policy was originally made out for the whole $5000 on the stock; and that on the 3rd of June, 1871, when the Defords discovered the mistake, the endorsement on the face of the policy of that date was made by the Secretary of that Company for the purpose of correcting the mistake, and expressing what was the original contract of insurance made before 2nd of May, 1871.

This evidence was rightly admitted, and the rule that parol testimony cannot be received to contradict or vary

the terms of a written contract, *applies only in suits be-tween the parties to the instrument.* Where the enquiry is collateral to the main question, such testimony is always admissible.     2 *Taylor on Evidence, secs.* 1053, &c. ; *Natl. Fire Ins. Co. vs. Crane,* 16 *Md.,* 260.

The fourth exception is to the Court's rulings on the prayers :

It does not admit of doubt that the facts proved and set forth in the plaintiffs' first prayer clearly establish the waiver.     *Citizens' Fire Ins. Co. vs. Doll,* 35 *Md.,* 89 ; *Franklin Fire Ins. Co. vs. Chicago Ice Co.,* 36 *Md.,* 119, 132 ; *Flanders on Fire Insurance,* 543–4.

The defendant's second prayer, which was rejected, differs from the defendant's tenth prayer, which was con-ceded, by asking the Court to instruct the jury, that the words following, used in a written statement sent by the Defords, together with the preliminary proof: "Hides and leather, stock in tannery, $56,500, belonging to De-ford & Co.," referred to the stock of hides and leather. If the word "stock" did not clearly include the bark and other property for the use of the tannery, it was a tech-nical term to explain which testimony was admissible, and the decision of its meaning was within the province of the jury.     Indeed, as the construction of this paper depends upon collateral facts in the case, it might on that ground alone be properly left to the jury.     1 *Taylor on Ev.,* secs. 36, 37 ; 1 *Greenl. Ev.,* sec. 279 ; *Grove, Trustee, &c. vs. Rentch,* 26 *Md.,* 378 ; *Brown vs. McGran,* 14 *Pet.,* 493–4.

The defendant's third prayer, before it was modified by the Court, assumes that the preliminary statement was believed by the plaintiffs to be correct at the time it was sent, but asks the instruction, that if the plaintiffs, before writing the letter of September 30th, 1871, discovered the error in said statement in regard to the number of hides at the tannery at the time of the fire, and did not then correct it, that the plaintiffs could not recover.

The Court, in the modified prayer, certainly gave fully as much as the defendant had a right to ask, when requiring, that to defeat the action there should have been a fraudulent intent on the part of the plaintiffs in not making the correction. It is only by "fraud and false swearing" that the claimant forfeits all claim by virtue of the policy.

The defendant's eighth prayer, which was rejected, is to the effect that the defendant cannot be regarded as having waived the defects in the proof of loss, if Topper, Shields and Smouse, were not agents of the plaintiffs, and if the defendant had no notice or knowledge that they were not such agents.

The preliminary proof must show on its face a compliance with the seventh condition attached to the policy, otherwise there would be a formal defect. "The particular account of the loss must be signed with the hand of the assured or by their guardian or agent," and the terms of the statement in this case, and the circumstances under which it was sent, could leave no doubt on the mind of the defendant that the proof was technically defective.

The defendant's sixth prayer assumes that the statement in the application of Deford & Co., that they proposed an insurance of $3000 on the building *"in addition to the* $4000 *on same in City Companies,"* was a *warranty* incorporated in the policy, and that the insurance of the trustees for $4000 on the same building, cannot be considered, although B. F. Deford testified that he brought it to the knowledge of Pole at the time when the agreement for insurance was made.

This prayer was rightly rejected:

1. The application was drawn up by Pole, the Company's own officer and agent, and is to be construed most strongly against the Company. If he was informed by the Defords that the $4000 on the building, and the

394          MARYLAND REPORTS.

Planters' Mutual Ins. Co. of Wash. Co. *vs.* Deford, *et al.*

$500 on the bark, were on account of the trustees, and he wrote in the application that they were for the Defords, the Company cannot take advantage of it. *Plumb vs. Cataraugus Ins. Co.*, 18 *N. Y.*, 392; *Rowley vs. Empire Ins. Co.*, 36 *N. Y.*, 550; *North American F. I. Co. vs. Throop*, 22 *Mich.*, 146; *Miner vs. Phœnix Ins. Co.*, 27 *Wisc.*, 693; *Reaper Ins. Co. vs. Jones—Ins. Law Journal*, June, 1872, *p.* 759; *Miller vs. Mutual Benefit Life Ins. Co.—Ins. Law J.*, *Sept.* 1871, *p.* 28; *Union Mutual Ins. Co. vs. Wilkinson*, 13 *Wallace*, 222; 2 *Am. Leading Cases*, 916; *McBride, et al. vs. Republic Fire Ins. Co.*, 2 *Ins. Law Journal*, (*April*, 1873,) 272, 273.

2. The statement that there were already $4000 insured on the same building was strictly true, and the proof that it was insurance on account of the trustees, does not contradict, vary or add to, but only explains the terms of the application.

3. The application did not become part of the policy. The language of the policy should rather be construed to make the *description of the property*, as contained in the application, a part of the policy. *French vs. Chenango Mut. Ins. Co.*, 7 *Hill*, (*N. Y.*,) 122; *Phœnix Ins. Co. vs. Slaughter*, 12 *Wall.*, 404; *Flanders on Insurance*, 211, 225, 226.

And if this is the proper construction, the statement was only a representation, and the question of a substantial compliance depends on the materiality of the representation, which is a question for the jury. That it was not material in this case is very clear. *Frank. Fire Ins. Co. vs. Coates & Glenn*, 14 *Md.*, 285.

4. Even if the meaning of the policy is that the application was made part of it, it does not follow that all its statements are warranties.

Policies of insurance are to be construed like other contracts, and all parts of the instrument are to be considered to ascertain the intention. The endorsement on

the policy, in regard to prior insurances, is inconsistent with the view that the statement in the application is a warranty; it makes that statement immaterial. *Angell on Ins.*, sec. 143; *Md. Fire Ins. Co. vs. Whiteford*, 31 *Md.*, 225; *U. S. Ins. Co. vs. Kimberly*, 34 *Md.*, 231-2; *Wash. Fire Ins. Co. vs. Kelly*, 32 *Md.*, 421.

The written part of the policy has greater effect than the printed parts. 2 *Tayl. Ev.*, sec. 1033, and cases in note.

5. The agreement, made between B. F. Deford and Pole, at the end of April, was that there should be an endorsement on the policy, by which "all other insurances should be permitted without notice," and, under the authorities already cited, the defendants were estopped from making any objection in regard to other insurance, whether prior or subsequent. In this view, the ruling of the Court in regard to the change of the policy of the Union Ins. Co. becomes immaterial. *Rathbone vs. City Ins. Co.*, 31 *Conn.*, 193; 2 *Am. Leading Cases*, 905, 906.

ROBINSON, J., delivered the opinion of the Court.

This action was brought on a policy issued by the appellant on the 6th of May, 1871, insuring the property of the appellees, known as the *Bottle Run Tannery*, against loss by fire, to the amount of eight thousand dollars, distributed as follows:

"On tannery with additions............$3000
Hides and leather tanned, and in pro-
    cess of tanning......................... 2000,
Bark in sheds............................ 3000"

On the 30th of June, 1871, the tannery building was entirely destroyed by fire, and the stock of hides in part destroyed and in part injured. The loss on the building was estimated at twelve thousand dollars, and on the stock of hides and leather, $18,507.05, thus making the entire loss $30,507.55.

The building was insured in different companies, including a policy of $4000 in favor of Deford & Appold, trustees, to the amount of $10,500, and the stock of hides and leather $18,500, making altogether $29,000.

The policy of the defendant, provided that any subsequent insurance of the property by the appellees, should render it null and void.

At the trial, a policy of $5000 on the stock of hides and leather issued by the Union Fire Insurance Company of Baltimore, on the 2nd of May, 1871, was offered in evidence, upon which was the following endorsement:

"1871, June 3rd, after this date, this policy covers $2500 on stock, and $2500 on building."

This endorsement by which $2500 of the $5000 was transferred to the tannery building, being subsequent to the date of the defendant's policy, the plaintiffs offered to prove by Thomas Deford, a member of their firm, and also by Otis Spear, agent and actuary of the Union Fire Insurance Company, that he, Deford, just before the issuing of the policy applied to the Union Insurance Company for a policy of $2500 on the building and $2500 on the stock of hides and leather, but by a mistake of the clerk of said Company, the policy was filled up for $5000 on stock, that this error was not discovered by the plaintiffs until about the 3rd of June, following, when upon their application the Company made the endorsement of June 3rd, as it now appears on the face of the policy, in order to correct the mistake thus made, and for the purpose of making the policy conform to the original contract of insurance made on the 2nd of May, the day it was issued.

This evidence is objected to on the ground, that the effect of it is to contradict or vary the terms of the policy issued by the Union Insurance Company on the 2nd of May, 1871. Although a policy of insurance may be *reformed* in a *Court of Equity*, where, by a mistake it does not express the contract between the parties, it is very clear

that in an *action at law*, upon the policy between the *parties thereto*, parol evidence is inadmissible to contradict or vary the terms of the same. But the evidence offered here does not contradict or vary the policy upon which this suit is brought, but is offered to prove an independent and collateral fact, namely, that the plaintiffs had not insured the property subsequent to the issuing of the defendant's policy. The latter denied its liability on the ground of a subsequent insurance, to prove which it relied on an endorsement made upon the policy of another Company. On the other hand, the plaintiffs offered to prove not only by themselves, but also, by the agent of the Union Fire Insurance Company, being the two parties to the contract, that the endorsement thus relied on by the defendant was made for the purpose of correcting a mistake of the clerk in filling up the policy, and that the original contract of insurance was as it now appears by said endorsement; under such circumstances, we take the law to be, that where the writing itself does not *constitute the cause of action* or *contract between the parties*, but is offered in evidence to prove a *distinct collateral fact;* parol evidence is admissible in respect of such fact, although it may contradict or be inconsistent with the *written evidence.*

There may be exceptions to this rule, in cases of deeds and mortgages, or other instruments which are required by law to be recorded in order that the public may have notice of their contents, and in regard to which the parties thereto, in a suit with strangers, will not be permitted to contradict the same by parol evidence. Such are the cases relied on by the appellant. In *Henderson vs. Mayhew*, 2 *Gill*, 393, an action was brought to recover for supplies furnished a master of the ship, and it was held that the grantees of an absolute bill of sale could not prove by parol evidence, that it was intended as a mortgage, and that by mistake it was drawn as an absolute bill of sale. The Court say:

"The appellants, after obtaining an absolute deed, and authorizing the community to regard them as owners of the vessel, cannot now, for their own benefit, be permitted to allege that their bill of sale is a mortgage."

The effect of the evidence here offered not being to contradict or vary the terms of the policy upon which the suit was brought, but to prove a collateral fact, we are of opinion that it was admissible.

II. The by-laws of the defendant provide in case of loss by fire, the insured shall give notice of the same within thirty days, and, shall deliver to the Secretary a particular account of such loss, verified by affidavit of the insured, or his agent, &c. The proof of loss was made out and verified by three disinterested persons, an employé of the plaintiffs, and two farmers living in the neighborhood, and is objected to on the ground, that it is not verified by the plaintiffs or their agent. Preliminary proofs are furnished for the benefit solely of the insurer, and if they are defective in any respect, good faith and fair dealing require that the insured should be notified of such defect within a reasonable time, in order that he may correct the same. If, however, instead of doing this, the Company puts its refusal to pay upon other distinct and independent grounds, it will be considered as having waived objections to such defects, and will not be permitted to rely upon the same as a defence to an action on the policy.

The preliminary proof here, was furnished on the 15th of July, and in the correspondence extending from that time to October 24th, in regard to an adjustment of the loss, not a word is said about any defect in the proof; on the contrary, the refusal to pay, was placed upon other *distinct and independent grounds,* namely a *subsequent insurance* of *the property,* and *over-estimate of the loss.* Conceding then that the proof furnished in this case was defective, we are of opinion that the defendant has waived the right to object to it on that ground.

III. Appended to the proof of loss was a statement by the plaintiffs of the several insurances on the property, and also the following statement in regard to the value of the property:

Machinery..............................$1000
*Stock in tannery, hides and leather*..$56,500

The defendant's second prayer assumes that his statement refers *exclusively* to the *hides and leather*, and if the plaintiffs knowingly misrepresented the value of same, they are not entitled to recover, although the jury should find the loss equal to the amount of the insurance. On the other hand the plaintiffs contended, that the sum of $56,500, was intended to represent the value not only of the *hides* and *leather*, but also *bark* and *other stock properly belonging to the tannery*, and that this interpretation is warranted not only by the language used, but also by the circumstances under which the statement was made. The interpretation of a written instrument belongs no doubt as a general rule to the Court, and where parties have expressed their intention in *clear* and *definite terms*, the paper must be construed according to the true meaning of the words used. The question here is what did the plaintiffs mean by this statement:

"Stock in tannery, hides and leather $56,500" appended to the proof of loss? Did they mean to value the hides and leather at $56,500? or did they include in addition thereto, bark and other stock in the tannery at the time of the fire? Now if the language used be liable to the construction assumed in the defendant's prayer, no one will question, but what it is equally susceptible of the meaning placed upon it by the plaintiffs. Here then is a paper which upon its face is liable to more than one interpretation, and the prayer was therefore properly rejected. The question as to whether parol evidence was admissible to show what the plaintiffs meant, becomes unnecessary to decide.

IV. It appears the whole number of hides sent from Baltimore to Cumberland for the tannery was 3964, of which 180 had been returned, and 625 had not reached the tannery, but were at Cumberland at the time of the fire. The actual number of hides at the tannery was therefore 3159, or what is equivalent 6318 *sides*, thus showing an error in the preliminary proof of $388\frac{1}{2}$ hides. At the time of the valuation, the hides and sides were classified in lots, and the damages to each lot valued separately. No addition was made at the time by the appraisers, nor subsequently by the plaintiffs, and the error was not discovered when the preliminary proof was furnished. The defendant in its third prayer assumes that if the proof of loss stated a greater number of hides to be at the tannery at the time of the fire than was actually there, that the plaintiffs believed such statement to be true, but afterwards, and before writing the letter of September 30th, discovered the error and did correct the same, they are not entitled to recover. Now the letter of September 30th, was written in reply to one received from the defendant, in which the latter placed its refusal to pay upon two grounds. 1st, subsequent insurance, and 2nd, over-estimate of loss. Not one word about an error of $388\frac{1}{2}$ hides, or that any such error had been discovered; on the contrary, the whole evidence shows that the defendant's refusal to pay was based upon other grounds. And yet if the plaintiffs inadvertently failed to correct this error in their letter of September 30, in which they denied a subsequent insurance, and averred their ability to prove the loss, they are not entitled to recover, and this too in the absence of fraud or bad faith on their part, and without the slightest pretence that the failure to correct said error, worked any injury to the defendant. The modification of the prayer by the Court,

"Provided the plaintiffs did not make such correction of the number of hides or sides, knowing the number of

the hides or sides therein stated, and knowing the same to be incorrectly stated therein, with intent to defraud the defendant," presented the law as favorably for the defendant as it had any right to expect. It was by *fraud and false swearing* that the plaintiffs forfeited the policy under the provisions of the by-laws, and not by inadvertently failing to correct an error which could not, and did not work any injury to the defendant.

V. In their written application, the plaintiffs stated, "we propose an insurance of $3000 on the aforesaid property in addition to the $4000 on same in City Companies * * * ." "We propose an insurance of $1000 on bark in addition to the $500 now on same."

It appears there was an insurance at the time of $4000 on the property in the name of Deford & Appold, trustees, who had a lien on the same for unpaid purchase money, and also an insurance in their names of $500 on the *bark*, but there was no insurance of the *plaintiffs' interest*, either on the building or bark.

The defendant's sixth prayer assumes, that the application by the terms of the policy became a *warranty*, and is to be construed as a representation by the plaintiffs that there was an insurance *on their interest* of $4000, and if the jury should find there was no insurance of their interest, the verdict must be for the defendant; and further that the insurance of the interest of Deford & Appold, trustees, was not such an interest as could be considered.

On the other hand the application having been prepared by the agent of the defendant, evidence was offered to prove that he was informed at the time that the insurance of $4000 was on the *interest of the trustees*, and the plaintiffs contend that if the paper does not state the facts truly, it was the fault of the agent, and the defendant is *estopped* from setting up the same as a representation by the plaintiffs—they also deny that it is made a *warranty*

by the terms of the policy, and if a warranty that it is liable to the interpretation put upon it by the defendant; they further contend, that evidence in regard to the insurance of the interest of the trustees was admissible and was to be considered, in determining whether the application referred to such insurance, or to an insurance of the plaintiffs' interest.

Whether the application in this case is to be construed as a warranty; or whether parol evidence is admissible to prove that the agent was informed at the time as to the nature and character of the insurance of $4000, and that the defendant is thereby *estopped* from relying on such a defence, are questions not necessary to be decided. What-ever conflict there may be in the decisions in regard to the latter question, it has been held in many well considered cases that such evidence is admissible, and whenever the breach of warranty or representation can be fairly attributed to the fault of the agent of the Company, the latter will not be allowed to set up such breach as a defence to an action on the policy. *Union Mutual Ins. Co. vs. Wilkinson,* 13 *Wallace,* 222; 2 *Am. Leading Cases,* 916; *Hough vs. City Fire Ins. Co.,* 29 *Conn.,* 10; *North American Fire Ins. Co. vs. Throop,* 22 *Michigan,* 146.

But conceding for the purposes of this case that such evidence is not admissible, and further that the application is to be construed as a warranty, questions we are not to be understood as deciding, the prayer of the defendant was properly refused on other grounds. No principle is better settled, than that policies of insurance, like all other contracts, are to be construed with a view to ascertain and give effect to the intention of the parties. This intention it is true, is to be ascertained from the *face of the policy* itself, provided the language used is *clear* and *unambiguous,* and in such cases it is the duty of the Court to ascertain the *true meaning* of the words used, and when ascertained to subject them to the established rules of law.

Where, however, the language used is not clear and unambiguous, but is susceptible of *two* or *more interpretations,* extrinsic evidence is admissible upon the same principles and subject to the same rules, that are applicable to all other written contracts. And it may, and does sometimes happen, that upon the evidence thus offered, taken in connection with the language used in the contract, Courts give to the instrument an interpretation different from that which it would have received from the face of the paper itself. In such cases the extrinsic evidence is not offered, nor is the effect of it, to contradict the written terms of the contract, but to explain the meaning of the parties thereto, by pointing out and connecting it with the subject-matter to which it refers.

The question here is, what did the plaintiffs mean by saying to the defendant, we want an insurance by you of $3000, in addition to the $4000 on the property now in City Companies? Is it to be interpreted as a declaration by them that there was such an insurance on *their interest,* and looking to the paper itself, does such an interpretation exclude all others; or are the terms used consistent with the meaning put upon it by the plaintiffs, namely, as a statement by them of the amount of insurance on the property at the time, without intending to designate the *interest* insured ? Now it must be conceded, they do not state in so many words it is their interest that is insured to the amount of $4000, and if the language used is liable to such an interpretation, it is also equally susceptible of the meaning put upon it by the plaintiffs. The application does state in explicit terms that there is an *insurance of* $4000 *on the* property, but it *does not state in clear and unambiguous language* whether the insurance is on the *interest* of the *plaintiffs,* or of parties having liens on the property. Under such circumstances, it was clearly competent for the plaintiffs to prove that there was an insurance of $4000 on the building and $500 on

the bark in the name of the trustees, at the time the application was made, and such evidence was to be considered in determining whether it was the insurance meant by the plaintiffs in their application. Such evidence does not contradict, nor is it inconsistent with the written terms of the application,—the effect of it is to point out and identify the subject-matter referred to and thus enable the Court and the jury to ascertain the true meaning of the parties.

From what we have said it follows, the plaintiffs' prayers were properly granted, and that no error was committed in the modification of the defendant's third, and in the refusal of its sixth, seventh, eighth, ninth and tenth prayers.

*Judgment affirmed.*