THEODORE STANISICS, APPELLANT, V. HARTFORD FIRE INSURANCE COMPANY, APPELLEE.

FILED MARCH 20, 1909.   No. 15,550.

1. **Insurance Contract: ENFORCEMENT.** A contract of insurance is a contract of indemnity, and any person attempting to enforce a claim under such a contract must show an interest in the subject matter of the contract.

2. **Appeal: FINDINGS BY COURT.** The findings of the district court in a law action tried to the court without the intervention of a jury are entitled to the same weight as the verdict of a jury, and will not be disturbed unless the evidence is clearly insufficient to support them.

APPEAL from the district court for Lancaster county: EDWARD P. HOLMES, JUDGE. *Affirmed.*

*Samuel J. Tuttle,* for appellant.

*R. W. Barger* and *Hall, Woods & Pound,* contra.

LETTON, J.

This was an action to recover upon a policy of fire insurance issued to one Parks. The policy had attached a

mortgage clause by which the loss was made payable "to Rena L. Salisbury or assigns, mortgagee or trustee or successor in trust as hereinafter provided." The plaintiff claims to be the owner of the mortgage by assignment from Rena L. Salisbury, and bases his right of recovery upon the mortgage clause.

The evidence discloses a very peculiar state of facts. The building which was insured was a dwelling situated upon a ten-acre tract of land near Lincoln. In 1903 the land belonged to certain nonresidents for whom the plaintiff Stanisics was apparently acting as agent. He purported to sell it and procured a deed of conveyance to be made to one Fred Williams, who had no interest in the matter, and who received the title for Stanisics' benefit. He then caused Williams to transfer the property to one Estella McMasters, who was then a minor, and then procured her to execute certain notes and a mortgage on the property for the sum of $1,800 payable to one Rena L. Salisbury. Miss McMasters had no interest whatever in the property, and merely acted in the matter to accommodate Stanisics. He had originally applied to Williams to allow him to have the notes and mortgage made payable to him, but Williams refused to permit this to be done, and suggested that Mrs. Salisbury, who was then visiting at Williams' home and who was a nonresident of this state, might be willing to do it. Upon this suggestion, with her consent, the name of Mrs. Salisbury was inserted in the notes and mortgage without consideration, and she indorsed and assigned them in blank without recourse on her. The papers were then delivered to Stanisics. No one but the plaintiff up to this time had any interest in the property. In fact, this is expressly admitted in the plaintiff's reply. Soon afterwards the plaintiff procured Estella McMasters to convey the property to Clarence G. Parks without any consideration to her. The only disputed facts in the case arise from this transaction, the defense claiming that Parks had no insurable interest in the property, but that he merely took

52

the naked legal title for the benefit of Stanisics who continued to be the real owner, while the plaintiff contends that Parks was an actual *bona fide* purchaser, and that the $1,800 mortgage given to Mrs. Salisbury and assigned by her was given in order to effectuate the sale to Parks and with his full knowledge and consent, he having previously informed plaintiff that he could not be sure that his wife would sign a mortgage, and, plaintiff not desiring to sell under a contract for future payments, the mortgage was made to carry out the terms of sale.

At the time these transactions were had, it would seem that there was an insurance policy of $600 upon the property, but a few weeks later a new policy was issued for $1,000 containing the mortgage clause upon which this suit is based. The house burned in August. Estella McMasters is the daughter of one Mrs. Blake, who kept a rooming house, where Parks, who is a piano salesman roomed while in Lincoln. Parks and Mrs. Blake both swear that Stanisics was present at her home with a notary at the time the deed was made from her daughter to Parks, and that Parks then gave a deed back to Stanisics for the property. They also say that the whole transaction was for Stanisics' benefit; that Parks had not met Stanisics before this time, had not seen the land, and did not see it for some weeks after. They testify that at Stanisics' suggestion Parks made some improvements upon the house; that he bought some furniture from Mrs. Blake and placed it in the house; and that he procured a policy of insurance to be made upon the furniture and collected the insurance after the fire. Parks further testifies that Stanisics, through Mrs. Blake, furnished the money to pay the insurance premium, and that, as he and Stanisics came from the insurance agent's office, Stanisics told him he had better leave town because the building was liable to burn, and he might go to the penitentiary; that he left and went to Hastings, and that the building burned while he was gone. In rebuttal Stanisics denies making this statement, and adheres to his explanation of the reasons why the

deeds were made in blank and why the blank assignment of the mortgage was made. The case was tried to the court without the intervention of a jury. The court made specific findings of fact, the most important of which are, in substance, that the transfer to Parks was without consideration; that Parks was financially irresponsible; that he permitted the property to be conveyed to him at the request and solicitation of the plaintiff; that he was not a *bona fide* purchaser; that the improvements made by him upon the premises were made by money furnished indirectly by the plaintiff, and were made at the request of the plaintiff and for his express benefit, and that Parks had no other interest in the premises except for reimbursement or compensation for his trouble and services in the matter. The court then found generally for the defendant and rendered a judgment dismissing the case.

The appellant insists that, upon the findings of the court below, the judgment should be for the plaintiff. He predicates this argument upon the fact that the court found that Parks moved furniture into the house and made repairs and additions thereto, and contends that this is equivalent to a finding that Parks had an insurable interest in the property. But he overlooks the legal effect of the further findings that the improvements were made at the instance and request of the plaintiff, and that Parks had no interest in the premises. The findings must be considered as a whole, and thus considered they will not support a judgment for the plaintiff. The principal complaint of the appellant is that the court drew the wrong conclusion as to the respective credibility of the witnesses, and that it should have found that Parks was a *bona fide* purchaser of the property. It seems to be conceded that if the story of Mrs. Blake and Parks is true, and that of the plaintiff untrue, there can be no recovery, and with this view we coincide. We think the evidence is amply sufficient to sustain the findings of the court as to the relations which Parks bore to the plaintiff, and as to his interest or lack of interest in the prop-

erty. The plaintiff claims as assignee of Mrs. Salisbury; but at the time she assigned the notes and mortgage she had absolutely no interest in either mortgage or property. Divested of shams and subterfuges, the effect of the conveyance from Williams to Estella McMasters and of the mortgage from her to Mrs. Salisbury and the assignment of the mortgage to the plaintiff is the same as if the plaintiff had conveyed his own property to himself, executed notes and a mortgage thereon to himself, and indorsed and assigned them to himself. It is clear that such a mortgage and assignment are ineffective to constitute a basis for a claim of right as long as they are in the original owner's hands, and that all this juggling with the title made no real change in the actual ownership of the property. When the mortgage was made to Mrs. Salisbury, she had no interest in the property. When she assigned the notes and mortgage, she had no such interest, and, when the policy was issued, neither she nor her assignee had any mortgage interest to which a contract of insurance in favor of either of them as mortgagee could attach. A contract of insurance is a contract of indemnity, and any person attempting to enforce a claim under such a contract must show an interest in the subject matter of the contract. Strictly speaking, that which is insured is not the property itself, but the interest of the person, who is indemnified against a loss occurring to him by reason of injury to the property or its total destruction. The district court found that at the time the policy of insurance was issued to Parks he had no insurable interest in the property, and that it was in fact the property of the plaintiff. Taken in connection with the lack of insurable interest in Mrs. Salisbury, this is not sufficient to support a contract of insurance for the benefit of her assigns. In such a case as this, the court will look behind the scenes, and will consider the facts as they actually are, and not as they appear to be. Questions as to the legal rights of the parties which might arise in case the district court had found that Parks was

the real owner of the property at the time the policy was issued might be very interesting, but these we are not called upon to determine. The findings of the district court in a law action tried .to the court without the intervention of a jury are entitled to the same weight as the verdict of a jury, and will not be disturbed unless the evidence is clearly insufficient to support them.

The evidence sustains the findings, and the judgment of the district court must be

AFFIRMED.