L. C. MADSEN, TRUSTEE, APPELLEE, V. FARMERS & MER-
CHANTS INSURANCE COMPANY, APPELLANT.

FILED JUNE 10, 1910.   No. 16,082.

1. Insurance: UNFILED CHATTEL MORTGAGE: MATERIALITY.   The existence in the hands of the mortgagee of an outstanding, unfiled chattel mortgage upon a stock of goods, given as security for a guaranty of a debt of the mortgagor, is a fact material to the risk in a contract of insurance of the goods, even though the instrument contains a clause that it "shall not be valid until and unless filed."

2. ————: ————: CONCEALMENT.   If such a mortgage exists, and the applicant for insurance, when inquired of whether the property "is mortgaged or otherwise incumbered," answers in the negative, this is the concealment of a fact material to the risk, which, under the conditions of the policy that "this entire policy shall be void if the assured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof. * * * This entire policy shall be void * * * if the subject of insurance be personal property and be or become incumbered by a chattel mortgage"— avoids the contract.

APPEAL from the district court for Howard county: JAMES N. PAUL, JUDGE. *Affirmed on condition.*

*A. L. Chase* and *Charles A. Robbins,* for appellant.

*Charles B. Keller* and *T. T. Bell, contra.*

LETTON, J.

This is an action upon an insurance policy.  The policy was dated October 15, 1907.  It provided for $4,700 insurance upon merchandise, $300 upon furniture and fixtures, and $100 upon a piano, all contained in a store building in Cotesfield, Nebraska, the property of Joseph Jarosz. On the 1st of December, 1907, the property was destroyed by fire.  The petition alleges that a few days afterwards defendant offered to pay the full amount of the policy within 60 days, as provided by the policy, or to pay the

same immediately, less a discount of 2 per cent.; that the plaintiff, who is the trustee in bankruptcy of Jarosz, accepted the discount proposition, but that afterwards the defendant refused to pay the loss upon the ground that there was a chattel mortgage on the property when the policy was written. The defendant denies the settlement, pleads concealment of material facts, and fraud and misrepresentation in the written application, in that, on or about the 27th of February, 1907, Jarosz executed a chattel mortgage to one St. Nadolinski covering all of the insured goods; that by collusion this mortgage was kept secret and concealed, and the defendant was thereby induced to execute a policy which it would not have done had it been informed of the incumbrance. It further alleged that when proofs of loss were prepared and received defendant had no knowledge of the existence of the mortgage, and that when it ascertained this fact it tendered back to the assured the full amount of the premium, which it still proffers. The reply is a general denial. At the conclusion of the trial both parties moved for a directed verdict. The court instructed the jury to return a verdict for the full amount claimed by the plaintiff.

The only material question presented is: Was the policy void at its inception by reason of the execution of the instrument, exhibit 6, which defendant contends is a chattel mortgage and was such at the time it was executed, but which plaintiff claims did not become a mortgage under its terms until filed in the office of the county clerk? Jarosz purchased this stock of merchandise from T. T. Bell of St. Paul, Nebraska. Mr. Bell testifies that at the time he sold the stock of goods he went to Cotesfield for the purpose of closing the transaction; that he had a contract of sale drawn which contained a guarantee of the payments to be made by Jarosz, and that Mr. Nadolinski, who was Jarosz' father-in-law, agreed to sign the guarantee, but insisted that he should have some security from Jarosz "so that he could have some rights in the property if Jarosz should not pay as he agreed, or if

he should feel insecure in any other way." Mr. Bell fur-
ther testified that he had no chattel mortgage blank with
him, but that he did have a real estate mortgage blank
which he changed so as to cover the chattel property.
Jarosz then said "that he was afraid that if he gave a
chattel mortgage on the stock it would make him trouble
in getting credit as well as getting insurance." Mr. Bell
then said: "There was one way it could be done; that if
Mr. Nadolinski would agree that this paper should not
be a lien or should not be valid until he felt unsafe, and
then filed it, it could be fixed in that way so it would be
a lien after it was filed." Nadolinski then said: "All he
wanted was something so that if he should feel insecure
that he could get hold upon the property and protect him-
self against his guarantee on this bond." That after a
few more words Mr. Bell inserted the words: "And shall
not be valid until filed." That he "told them * * * that
would enable him to get a lien on the property when it
was filed, and until that time it would not be a valid
mortgage"; and, the instrument then being read to Jarosz
and Nadolinski, the contract of purchase was signed by
Nadolinski, and the mortgage by Jarosz. On cross-exam-
ination Mr. Bell testified that he told them that if Jarosz
gave a chattel mortgage on the property he could not get
insurance, and that he might have told them that if the
paper was put upon record then it would be a lien and
would invalidate any insurance they might have. Exhibit
6, the instrument referred to, is in form a mortgage upon
the stock of goods, furniture and fixtures. It contains
the following provisions: "This mortgage is given to
secure said St. Nadolinski against loss and liability by
reason of his guaranteeing the contract of Jos. B. Jarosz
in the purchase of said stock from T. T. Bell, and shall
not be valid until and unless filed." Jarosz was then
given possession of the stock of goods. The mortgage was
filed by Nadolinski the day after the fire.

The defendant contends that the instrument executed
and delivered by Jarosz to Nadolinski was a chattel mort-

gage on the property, that it was an "incumbrance" within the meaning of the application and policy; and further contends that the policy is void for fraudulent concealment by the insured of the character of his title and interest in the property. The plaintiff insists that the express condition in the instrument, "And shall not be valid until and unless filed," is a condition precedent which had never been complied with before the destruction of the property by fire, and that consequently the mortgage never took effect or became valid; that, this being the case, there was no misrepresentation or concealment in the application; that there being then no chattel mortgage in existence the negative answer to the question whether the property was "mortgaged or otherwise incumbered" was true. We are of opinion that at the time the insurance was procured Jarosz concealed from the insurer a material fact concerning the subject of insurance. He knew at the time that the instrument, exhibit 6, was executed that if the fact were known that a chattel mortgage existed on the stock it would be impossible to procure insurance, and therefore knew that this fact was material to the risk, yet at the time of applying for the insurance he stated that the property was not "mortgaged or otherwise incumbered." The existence of this instrument was a fact which the insurance company was entitled to know, so that it might decide whether to enter into the insurance contract or not. In all insurance contracts there is a moral hazard, and it is necessary to the safe operation of the business, and entirely proper and right, that an insurer should require information from the applicant which will allow it to determine from the facts the extent of this hazard and of the risk which it is assuming. The instrument affected the rights of the insured in the property. His interest in it was not the same as it was before it was executed, being subject to the will of the mortgagee. It was not the property itself that was in reality the subject of the insurance contract, but it was the interest of the insured therein, and an instrument

which affected such interest to such an extent as did this mortgage most certainly affected the moral hazard. *Stanisics v. Hartford Fire Ins. Co.,* 83 Neb. 768. A clear discussion of this subject is found in the opinion of Judge Sanborn in *Connecticut Fire Ins. Co. v. Manning,* 160 Fed. 382, from which we quote: "The property insured against fire in this policy, and in like policies of insurance ordinarily, is not the real or personal property described therein, but it is the interest of the assured in that property. The extent of his interest is therefore necessarily material to the risk which the underwriter assumes. The moral hazard is one of the main elements, if not the chief element, of an insurance risk, and it is never negligible. It is always material to the risk. Moral hazard is but another name for a pecuniary interest in the assured to permit the property to burn. Statistics, experience, and observation all teach alike that the moral hazard * * * is greatest when the assured may gain the most by the burning of the property. The extent of the interest of the assured in the property insured measures the moral hazard, and hence is always material to the risk of the insurance. But any incumbrance upon the interest of the assured diminishes that interest by the amount of the incumbrance and thus becomes itself material to the risk. The responsibility of the assured, his ability to pay the premiums upon his policy, is another important consideration to the underwriter, and the extent of his interest in the insured property, the incumbrance upon it, and his indebtedness on account of that incumbrance tend clearly to show his responsibility, and in that way are material to the risk." See, also, *Secrest v. Hartford Fire Ins. Co.,* 68 S. Car. 378, 47 S. E. 680; *Hutchins v. Cleveland Mutual Ins. Co.,* 11 Ohio St. 477; *Lee v. Agricultural Ins. Co.,* 79 Ia. 379. The instrument, although written upon a real estate mortgage blank, was a valid mortgage upon the property. The consideration had passed, the mortgagor had lost all control over the instrument, and its entire possession and control had

vested in the mortgagee. He might file the same at any time. It is apparent from the testimony that the parties understood it was to be kept from the records for the express purpose of obtaining credit and insurance. The object, so far as concerned the defendant here, was to deceive the insurer into believing that no one, other than Jarosz, had any interest in the property. Such proceedings are not favored. *Ackerman v. Ackerman*, 50 Neb. 54.

While, as the plaintiff contends, forfeitures are looked upon by courts with ill favor, and will be enforced only when the strict letter of the contract requires it, it is equally true that good faith and fair dealing are required in insurance contracts as much as in any other contract, and that courts are as reluctant to countenance deceiving an insurance company by the concealment of material facts as deceiving any other corporation or an individual. We have heretofore said: "When the insurer makes inquiry about facts material to the risk, he is justified in acting on the assumption that the information imparted by the applicant for insurance is correct. He is entitled to know whether the property to be insured is incumbered, and, if so, to what extent, so that he may act intelligently in determining whether he will accept or decline the risk. The representations of the applicant become the basis of insurance, and if they be false, touching matters material to the risk, the contract obtained through their influence cannot be enforced; and it is, in such case, quite immaterial whether the misstatement resulted from bad faith or from accident or ignorance"—citing cases. *Scal v. Farmers & Merchants Ins. Co.*, 59 Neb. 253.

The policy contains the following provision: "This entire policy shall be void if the assured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof. * * * This entire policy shall be void * *. * if the subject of insurance be personal property and be or become incumbered by a chattel mortgage." It was the duty of Jarosz to be candid and fair in his deal-

ing with the insurance company, and to state the facts with reference to the execution and delivery of this instrument, so that the company might determine for itself whether it was willing to assume the risk. The concealment by him of these facts was a violation of the foregoing condition of the policy, and his negative answer to the question, "Is the property mortgaged or otherwise incumbered?" was untrue. Whether the instrument in question was a mortgage or not, it constituted an "incumbrance" upon the property presently effective or not at the option of Nadolinski. It was a lien, as defined by 2 Bouvier, Law Dictionary, 226: "A hold or claim which one person has upon the property of another as a security for some debt or charge." *Sessions v. Irwin,* 8 Neb. 5. See, also, Black, Law Dictionary, 613, defining "Incumbrance."

For these reasons, we think the district court erred in directing a verdict for the full amount of the policy. The plaintiff, however, was entitled to a verdict for the amount of the insurance upon the piano, which was not included in the mortgage. The judgment of the district court will therefore be affirmed, if plaintiff files a remittitur of the verdict in excess of $100, with interest at 7 per cent. from the 12th day of December, 1907, within 40 days; otherwise, the judgment will be reversed and the cause remanded for further proceedings; costs in this court taxed to plaintiff.

AFFIRMED.