## MUTUAL FIRE INSURANCE COMPANY *vs.* ARTAMUS V. OWEN.

*Policy of Fire Insurance—Insurable Interest—Waiver of Conditions—Knowledge of Title—Evidence—
Infant's Contract—Appeal.*

Where the declaration, in addition to a special count, contains the common counts in proper form, a demurrer thereto must be overruled.                                      p. 261

In an action on a policy of fire insurance, the evidence that the plaintiff complied with the requirement of proof of loss, and that he furnished duplicate bills for goods purchased by him as far as was possible under the circumstances, *held* sufficient to go to the jury.                              pp. 262, 263

The law will not permit an infant to repudiate his contract to convey land, and at the same time retain improvements placed on the land in reliance on his agreement to convey. p. 264

One who built and paid for a store building on his ward's land under an agreement that the ward would convey the land to him on coming of age, and that he should have the right to remove the building within a year after the ward became of age, had an insurable interest in the building.      p. 264

One who has built on the land of another, with that other's permission, has an insurable interest in the building.      p. 264

Knowledge by an insurance company of the condition of the title to the property insured or other matters material to the risk, at the time the policy is issued, will prevent the company from later questioning the title or such other matters, provided the assured has some insurable interest.      p. 264

Knowledge of matters affecting the risk or conditions of the policy, acquired by the agent in soliciting the insurance, is the knowledge of the company.      p. 264

In an action on a policy of fire insurance, *held* that the question whether the plaintiff fully and truthfully disclosed his interest in the insured building, which was built on another's land, as required by the policy and the application, was for the jury.      p. 264

Whether, in an action on a policy of insurance on a building erected on another's land, plaintiff knew that the word "applicant" had been inserted by the agent in the application as being the name of the owner of the land, *held* for the jury.      p. 265

The insured is not bound by a false answer in his application, inserted by the insurer's agent without his knowledge.

p. 265

In an action on a policy of fire insurance on a building erected by plaintiff on an infant's land, under an agreement with the latter, *held* that whether the infant repudiated his agreement after his majority, thereby causing a change of title which plaintiff was bound to report to the insurer, was for the jury.      p. 265

In an action on a fire insurance policy, an error in plaintiff's prayer in requiring the jury to find that the plaintiff furnished duplicate bills "of all purchases under the circumstances of this case," instead of duplicate bills "of all purchases as far as was possible under the circumstances of this case," *held* not prejudicial to defendant.      pp. 265, 266

The defendant cannot complain of an error, in a prayer granted plaintiff, as to the amount of recovery, if he himself asked and received an instruction which contained the same error.      p. 266

One cannot complain of error in a prayer granted at his request.                                                  p. 266

In an action on a policy of fire insurance on a building, error in allowing a question to be asked plaintiff whether the building was his sole and separate property, this calling for a legal opinion, *held* not cause for reversal, he having already testified to the facts material to his title.                               p. 267

In an action on a policy of fire insurance on a stock of goods, *held* that the testimony of plaintiff's wife as to the value of the goods, based on an inventory taken a month before the fire, some of the prices in which were taken from catalogues of wholesale houses, was admissible.                          p. 267

*Decided April 30th, 1925.*

Appeal from the Circuit Court for Baltimore County (DUNCAN, J.).

Action by Artamus V. Owen, otherwise known as A. V. Owen, against the Mutual Fire Insurance Company of Montgomery County. From a judgment for plaintiff, defendant appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, DIGGES, PARKE, and WALSH, JJ.

*R. E. L. Smith,* with whom was *H. Courtenay Jenifer* on the brief, for the appellant.

*Lawrence E. Ensor,* with whom was *Noah E. Offutt* on the brief, for the appellee.

WALSH, J., delivered the opinion of the Court.

This suit was brought by the appellee, the plaintiff below, against the appellant, the defendant below, to recover for a loss alleged to have been suffered by the plaintiff under a fire insurance policy issued by the defendant.

On February 13th, 1919, the plaintiff, who was then conducting a store in a rented building in Charles County, in-

sured his stock of merchandise in the defendant company for eight hundred dollars. Later on he erected, at his own expense, a store building on ground owned by his infant ward, Claude Jameson, under an oral agreement that the ward would, on becoming of age, give him a deed for the land on which the store building stood. There was also a written agreement between the plaintiff and his ward providing that the former should have the right to remove the store building at any time within a year after the ward became of age. The plaintiff testified, without contradiction, that this written agreement was to be relied upon only in the event that the ward repudiated his oral agreement to convey the land, and the written agreement itself could, of course, have been repudiated, and it actually contained a provision recognizing the right of the ward to repudiate it when he attained his majority. It also appeared that this land was to be conveyed in settlement of certain damage inflicted by the ward on two horses of the plaintiff. On December 7th, 1921, about three months after the plaintiff had moved into his new storeroom, Mr. Neave, an agent of the defendant, whom the plaintiff had known for about twenty-seven years, called on him, and as a result of this call the plaintiff increased the amount of insurance on his merchandise to fifteen hundred dollars, and took out nine hundred dollars insurance on his store building, the additional insurance being subsequently noted on his original policy. At the time this additional insurance was applied for the plaintiff signed an application for it in blank, which application was apparently filled out later by the agent Neave. In this application, after the printed words "Title to the real estate is in," the word "applicant" was written, but as the plaintiff testified that he signed the application in blank, and Neave, though a director in the defendant company at the time of the trial, did not testify at all, it is a fair assumption that Neave inserted the word "applicant." It does not appear from the record that the plaintiff ever saw the application again, except when the defendant introduced it in evidence at the trial. The original policy itself only

described the property as situated in the "storehouse of assured, situated at Welcome, Charles County," and no change was made in this description when the additional insurance was taken out.

In the fall of 1923 the plaintiff, having previously decided to move to his wife's farm in Baltimore County, made some effort to dispose of the store, and between October 10th and 14th, 1923, an inventory of the stock of goods was made for the purpose of fixing a selling price, but, no purchaser having been secured, the plaintiff began to sell the goods at cost. During the first part of November, 1923, he began moving his farming equipment to Baltimore County, and on the night of November 15th, 1923, while this moving was still being carried on, the store building and its contents were completely destroyed by fire. The plaintiff notified the defendant of the loss, and requested payment in full under the policy. The defendant insisted upon strict proof of the loss. The plaintiff submitted what he thought was sufficient proof, and, payment not being made, he brought this suit. A verdict and judgment for the full amount of the policy, with interest, was obtained below, and the defendant appealed.

The record contains eight exceptions, the first four dealing with questions of evidence, and the last four being taken to the action of the trial court on the prayers, and we are also asked to review the action of the lower court in overruling a demurrer to the declaration.

The overruling of the demurrer was entirely proper. It was apparently intended to raise the question of whether or not the seventh count in the declaration contained a sufficient averment of the insurable interest of the plaintiff in the property destroyed, but as the declaration, in addition to the seventh count, also contained the common counts in proper form, and the demurrer was to the whole declaration, it was necessarily overruled. "If any one count is good the demurrer cannot be sustained." *Pearce v. Watkins,* 68 Md. 534, 538.

The refusal of the court below to grant the defendant's

first prayer, asking that the case be taken from the jury, forms the basis of the seventh exception, and as the determination of the propriety of the court's action on this prayer involves the two chief defenses in the case, we will consider it first.

The reasons urged by the defendant in support of this prayer were, first, that the plaintiff's evidence showing his compliance with the requirements of the policy regarding 'proof of loss' was insufficient to go to the jury, and, secondly, that his evidence showing that he fully and truly disclosed to the defendant his interest in and title to the property destroyed, as required by sections 34 and 35 of the terms and conditions of both the policy and application, was insufficient to go to the jury. After the fire the plaintiff notified the defendant that the plaintiff's account books and records had all been destroyed in the fire, and the defendant then demanded that the plaintiff furnish duplicate bills for the goods destroyed, as required by section 21 of the terms and conditions of the policy. The learned court below granted the plaintiff's first prayer, which instructed the jury that the plaintiff could not recover unless they found that he furnished duplicate bills for goods purchased by him "as far as it was possible for him to do under the circumstances of this case," and it is not contended that this is not a correct statement of law. *Mutual Fire Ins. Co. v. Pickett,* 117 Md. 638; *Farmers Fire Ins. Co. v. Mispelhorn,* 50 Md. 180. But the defendant, as we stated above, does contend that there was not sufficient evidence in the case to warrant the submission of this question to the jury. The plaintiff and his wife testified that the former dictated and the latter wrote letters to all the firms they could recall having dealt with, over thirty in all, requesting duplicate bills, that those who did not answer were written to a second time, that personal calls were made on some of them and one was called on the telephone, that nineteen bills were received and turned over to the defendant, that some of the firms were out of business and others were unable to furnish bills because the plaintiff

dealt largely on a cash basis and no book records of such purchases were kept. In addition to the foregoing the plaintiff, in further compliance with the terms of the policy, submitted himself to the adjuster and the counsel for the defendant for examination concerning these duplicate bills and other details connected with his proof of loss. In *Mutual Fire Ins. Co. v. Pickett, supra,* which involved a similar defense on a policy of the defendant company, the Court held that under the evidence in that case the question involved should not have been submitted to the jury, but the evidence in the present case is much stronger than was the evidence in the Pickett case, and in our opinion it fully justified the submission of the question to the jury.

The second question relates to the insurable interest and title of the plaintiff, and his representations to the defendant regarding them. It was apparently conceded that the plaintiff built and paid for the store building, and owned the merchandise in the building at the time of the fire. He testified concerning his interest and title that he told Neave, the defendant's agent, at the time the additional insurance was applied for, that the land on which the store building stood was owned by his ward, but that the ward had promised to deed the land to him when he became of age. He did not tell him that the written agreement gave him the right to remove the building, but both the plaintiff and his wife testified that they told Neave they had "writings" for the land, which "writings" he did not ask to see, and that Neave told them that if it was the plaintiff's building, the defendant company could insure it. If the jury believed this testimony, and it was not contradicted by either the agent, who did not testify at all, or by the ward, they were certainly justified in finding that the plaintiff did not misrepresent his interest in the building, and did not fail to fully and truthfully disclose his title and ownership. The ward's agreement to convey the land was clearly not binding on him, and if he repudiated it, the only remedy of the plaintiff would be the right to remove the building, and this right

would not be based on any contract to remove, which could with equal facility be repudiated, but on the legal theory that the law would not permit an infant to repudiate his contract to convey land, and at the same time retain improvements placed on the land in reliance upon his agreement to convey.

It seems to be established that one who has built on the land of another, with that other's permission, has an insurable interest in the improvements thus built. *Fletcher v. Commonwealth Ins. Co.,* 18 Pick. (Mass.) 419; *Fireman's Fund Ins. Co. v. Gatewood,* 10 Ky. Law Rep. 117; *Southern Ins. & Trust Co. v. Lewis & Brothers,* 42 Ga. 587; *Hope Mutual Ins. Co. v. Brolasky,* 35 Pa. St. 282; *Allen v. Sun Mutual Ins. Co.,* 36 La. Ann. 767, 38 L. R. A. (N. S.) 429, note; *Joyce on Insurance,* vol. 2, par. 961a; 26 *C. J.* 182; and it is also established that knowledge by an insurance company of the condition of the title to the property insured or other matters material to the risk at the time the policy was issued will prevent the company from later questioning the title or such other matters, provided the assured has some insurable interest. *Automobile Ins. Co. v. Wilson,* 144 Md. 249, 254; *Dulany v. Fid. & Cas. Co.,* 106 Md. 17, 34; *Mallette v. British Assur. Co.,* 91 Md. 484; *Hartford Fire Ins. Co. v. Keating,* 86 Md. 130-146; *Planter's Mutual Ins. Co. v. Deford,* 38 Md. 382-402; *British etc. Ins. Co. v. Cummings,* 113 Md. 350; 26 *C. J.* 36, (par. 22); 14 *R. C. L.* 1166 (par. 346). And knowledge of matters affecting the risk or conditions of the policy, acquired by the agent in soliciting the insurance, is the knowledge of the company. 14 *R. C. L.* 1159; 26 *Amer. & Eng. Ann. Cases,* 850; and cases cited *supra.*

These authorities seem to clearly establish the insurability of the plaintiff's interest in the store building, and, in our opinion, the question of whether or not he fully and truthfully disclosed that interest and the condition of the title to the defendant, as required by sections 34 and 35 of the policy and application, was, under the evidence in this case, properly submitted to the jury. Nor could the case properly be taken from the jury simply because the application contained

the statement that the "title to the real estate is in appli-cant." The question of whether or not the plaintiff had knowledge that the word "applicant" was inserted was clear-ly a jury question, and if the agent Neave inserted it, with-out the knowledge of the plaintiff, then the plaintiff would not be bound thereby. 14 *R. C. L.* 1174 (par. 351).

The defendant also claims that the case should have been taken from the jury because of evidence that, shortly after becoming twenty-one the ward, because of dissatisfaction with the plaintiff's accounts as his guardian, repudiated his agreements, and it is contended that this repudiation worked a change in the title and interest of the plaintiff, which change he failed to report to the defendant. Without stop-ping to examine the legal effect of this alleged repudiation, it is sufficient to say that the testimony regarding its having been made was confused and conflicting, and hence the sub-mission of this question to the jury was proper.

In accordance with the views heretofore expressed we find no error in the court's refusal to grant the defendant's first prayer.

The eighth exception was taken to the refusal of the court to grant the second prayer of the defendant. Part of this prayer as it is printed in the record is unintelligible, and there is no evidence in the record to support certain other parts of it, so that the refusal to grant it was clearly proper.

The fifth and sixth exceptions were taken to the granting of the plaintiff's first, second and third prayers. The chief objections to the first and third prayers have been disposed of in the discussion of the refusal of the court to grant the defendant's first prayer, and we deem it sufficient to say that we find no reversible error in the granting of either of these two prayers. The plaintiff's third prayer, as printed in the record, requires the jury to find that the plaintiff fur-nished "duplicate bills of all purchases made by the plain-tiff under the circumstances of this case," instead of stating that he should have furnished them "as far as it was possi-ble for him to do under the circumstances of this case," but the latter statement was contained in the plaintiff's first

prayer, and if any error was committed in not so stating the duty of the plaintiff in his third prayer, the error was certainly not prejudicial to the defendant.

The plaintiff's second prayer was as follows: "The plaintiff prays the court to instruct the jury that if they find for the plaintiff as set forth in the plaintiff's first prayer, then in estimating the damages, they may allow the plaintiff the actual value as established by the evidence of all the property proven by the plaintiff to have been destroyed at the time of the fire, not to exceed twenty-four hundred dollars ($2,-400), with interest in their discretion from the 15th day of March, 1924."

This prayer was, we think, defective because it failed to limit the plaintiff's recovery to nine hundred dollars on the store building and to fifteen hundred dollars on the merchandise, as provided in the policy. This particular objection to this prayer was not made below, but it was urged in this Court, and the defect would require a reversal unless the defendant is prevented from taking advantage of it. By the first part of the defendant's eleventh prayer, which was granted, the jury was instructed that if they found for the plaintiff, "their verdict should be for a sum equal to the cash value at the time of the fire of the property of plaintiff destroyed by fire. By property is meant the interest which the insured had in the things destroyed at the time of the fire." This prayer contains the same defect that is found in the plaintiff's second prayer, and as the defendant asked and received this instruction we do not think it can now complain about it. If a party to a suit asks the trial court to grant a prayer, and the request is granted, the party cannot, on appeal, contend that the prayer is erroneous. On the plainest principles of justice a party is bound by an instruction which it has itself offered and induced the court to grant, and, as the defendant's eleventh prayer, in so far as the objection under discussion is concerned, is similar to the plaintiff's second prayer, it cannot now object to the granting of either prayer. We accordingly find no ground for reversal in the granting of the plaintiff's second prayer.

The first exception was taken to the action of the lower court in permitting the plaintiff to answer the question, "was the store building erected by you your sole and separate property without any encumbrances?" We think the plaintiff could, if he knew, state whether or not there were any encumbrances on the building, but the answer to the other part of the question would seem to involve the giving of a legal opinion. However, the plaintiff had already testified to the facts material to his title to the property, and his statement that it was his sole and separate property, even if erroneously admitted, was not particularly prejudicial, and does not justify a reversal.

The fourth exception was abandoned at the argument before this Court, and so requires no further consideration. The second exception concerned testimony of the plaintiff's wife as to the value of the merchandise destroyed, as shown by the inventory taken a month before the fire, and the third exception was based on the lower court's refusal to strike out all testimony regarding the inventory, after the wife testified that some of the prices used in the inventory were taken from catalogues of two wholesale houses. We have carefully considered these exceptions, and we think that, under the circumstances of this case, no error was committed by the trial court in its rulings on them. For the reasons heretofore given the judgment will be affirmed.

*Judgment affirmed, with costs to the appellee.*