## UNITED STATES FIRE INSURANCE COMPANY *v.* EDWARD J. MERRICK ET AL.

[No. 36, October Term, 1936.]

478

*Decided January 19th, 1937.*

The cause was argued before BOND, C. J., URNER, OF-FUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*S. Ralph Warnken*, with whom were *J. Howard Mur-*

*ray, Charles Markell, Jr.,* and *Cook & Markell,* on the brief, for the appellant.

*Francis L. Klemm, Laban Sparks,* and *Daniel S. Sullivan,* submitting on brief, for the appellees. '

MITCHELL, J., delivered the opinion of the Court.

On June 29th, 1933, the United States Fire Insurance Company, a body corporate, the appellant, executed and delivered to E. J. Merrick and Thelma C. Merrick, husband and wife, the appellees, a policy of insurance indemnifying the assured, to the extent of $2,000, against direct loss and damage by fire to the contents of the appellees' dwelling house, located on Deer Park Road in Deer Park, a village of Baltimore County, Maryland.

The policy covered for the period of one year from its date, and among its provisions are found the usual conditions: (a) That the entire policy shall be void if the insured has concealed or misrepresented any material fact or circumstance concerning the same, or is guilty of any fraud or false swearing touching any matter relating to the insurance, either before or after a loss. (b) That unless otherwise provided by agreement in writing added thereto, the policy shall be void if the interest of the insured be other than unconditional and sole ownership; subject, however, to a stipulation found in the policy, that musical instruments and household furnishings purchased on the installment plan are covered only to the extent of the insured's payment thereon. And (c) that unless likewise provided by agreement in writing, the company shall not be liable for loss or damage to any property insured while encumbered by a chattel mortgage during the time of such encumbrance, it being liable only for loss or damage to unencumbered property embraced in the policy.

On July 24th, 1933, at about 2 a. m., the Deer Park Road dwelling of the insured, including all of its contents, was totally destroyed by fire; whereupon the insured sought from the company reimbursement for loss.

At the time of the procurement of the policy, the members of the household in which the articles were covered consisted of the insured and their infant child; and it is testified that on July 18th, 1933, six days prior to the date of the fire, Mrs. Merrick clandestinely left her husband, taking with her the infant child and certain articles of clothing and furniture, of the approximate value of $545. The husband, at the time of the fire, had charge of the work in a laundry, his duties requiring him to arrive at the laundry between the hours of 12.30 and 1.00 o'clock a. m.; and he testified that he stayed alone at the house on the night of the fire, and left for the scene of his work at about 12.30 or 12.45 a. m. Upon being notified of the fire, he immediately returned to the home, where he found the dwelling and its contents in ashes.

It was testified by Mr. Merrick that he and his family had previously lived in a larger house on Reisterstown Road, and that he moved to the Deer Park property in May, 1933; that the dwelling on the latter property contained three rooms on the first and second floors respectively; and that, due to a crowded condition when he moved to his new home, some furniture was stored in outbuildings and was not damaged by the fire. He further testified that after the fire he went to see Mr. Brown, the agent with whom he insured the property, and was informed that Charles T. Smith was the adjuster for the company. The policy was destroyed in the fire; and Mr. Merrick states that he asked the agent about a duplicate policy, but got no satisfactory answer from him. According to the witness Merrick, he was advised by Brown to send to the adjuster an itemized list of the articles destroyed, and the value thereof. This he did, and on July 29th, 1933, an inventory of the articles alleged to have been destroyed was received through the mail by the adjuster. This paper was not verified by affidavit, nor was it signed or sworn to by either of the insured, as required by the terms of the policy. It showed a total loss of $3,536.49. On August 21st the adjuster acknowledged the receipt of the list of articles claimed to have been

destroyed, advising Mr. Merrick that the company demanded full and complete compliance with the policy contract, directing special attention to the provisions of the policy with reference to the proof of loss, and inclosing a blank form for the purpose, in order that both of the insured might be in position to comply with the sworn statement referred to therein. In this letter Mr. Merrick was further told that the company waived none of the conditions of the policy and that the proof of loss must be filed within sixty days from the date of the fire, and executed before a notary public by both of the insured. A few days after August 31st, the adjuster received from Mr. Merrick the printed proof of loss, filled out, describing the property covered by the policy as belonging to Edward J. Merrick; the same being signed and sworn to by Mr. Merrick alone, and being accompanied by an inventory of the articles destroyed, similar to the first list submitted, and showing the same total loss.

On September 18th, 1933, the adjuster acknowledged receipt of the latter claim, and rejected the same for the following reasons:

(a) Because it did not indicate the name of the company against which the claim was made, or the name of the insured; and that no paper showing a description of the property insured was attached.

(b) That the claim was erroneous as to value and loss; was not substantiated by invoices of purchases; and that considerable of the property insured had been removed prior to the fire.

(c) That the policy under which the proof was made was issued in the name of both the husband and wife, whereas the proof of loss was executed by the husband alone, and the property described as belonging solely to him.

This letter of the adjuster also stated that the company demanded a full compliance with the terms of the policy, and waived none of the conditions thereunder.

On September 22nd, 1933, Daniel S. Sullivan acknowledged the receipt of the aforegoing letter, advising the

adjuster that the policy was destroyed in the same fire which resulted in the loss; requesting other blank proofs of loss, and also the return of the proofs submitted a few days before by Mr. Merrick. The proofs were not returned, but evidently a blank proof of loss was furnished, and this appears to have been filled out under the direction of Mr. Sullivan, as attorney for the insured, and is made on behalf of both Edward J. Merrick and Thelma C. Merrick. It sets forth that the property belonged to them both, and was unencumbered at the time of the fire; and is accompanied by a list of the articles alleged to have been destroyed, and the value thereof, showing a total loss of $3,528.29. This latter proof of loss was signed by Edward J. Merrick, and the name of Thelma C. Merrick was affixed thereto, *per* the said Edward J. Merrick, as representing the insured. It was sworn to on September 23rd, 1933, and apparently was filed with the adjuster on the same date.

On November 16th, Mr. Merrick wrote to the company for a copy of the policy, and on December 5th, through the adjuster, he received a reply inclosing the copy; the letter inclosing the same stating that, as the property insured was encumbered by a chattel mortgage at the time the policy was issued, and remained so until the time of the fire, the company tendered the refund of the premium paid. This check was later returned to the adjuster by Mr. Sullivan, and suit upon the policy was instituted on July 20th, 1934. From a judgment entered upon a verdict of a jury in the sum of $1,610, this appeal is taken.

At the trial below, the appellee Edward J. Merrick testified that at the time of the fire all of the articles listed in the final proof of loss were contained in the Deer Park Road dwelling, with the exception of such of them as had been removed by his wife when she deserted him, and he disclaimed any knowledge of such removal until after the final proof of loss was filed. This statement was corroborated by Mrs. Merrick, who testified that she deserted her husband on July 18th, 1933, without telling him that she

was going to leave him, and without letting him know where she had gone; she took up her abode in Virginia. She further stated that when she left the premises she took some articles contained in the dwelling with her; she did not tell her husband she was going to do this nor did she leave a list of what she took or tell him what she had taken; that she had meanwhile filed suit for divorce against him, and had not spoken to him from the time she left until the Saturday preceding the date of the trial. Her verification of the list of articles she removed from the premises, at the values shown in the proof of loss, amounts to the sum of $545. There being no evidence adduced by the appellants to the contrary, it is assumed that all of the articles which were left in the dwelling at the time of the departure of Mrs. Merrick were destroyed with the building, and just which articles these were can only be ascertained by eliminating from the inventory, sworn to by Mr. Merrick and furnished the company, the articles which Mrs. Merrick at the trial, under oath, stated she had removed from the premises, under the circumstances above detailed. A stipulation is found in the record waiving any question as to the delay in filing the final proof of loss.

At the trial the defendant produced in evidence a chattel mortgage in the sum of $300, executed on March 30th, 1933, by the insured to the Master Loan Service. Inc., purporting to cover chattels then contained in the Reisterstown Road dwelling, in which the mortgagors at that time resided. The mortgage was formally executed, but was not recorded. It is shown by the record that it was made out upon a printed form of the loan company which embodied the following preliminary printed matter: "* * * the said borrowers do grant, bargain, sell and assign unto the said mortgagee, all chattels, including household furniture, useful and ornamental, now in the use and possession of the said mortgagors, and contained in the premises now known as No. 6318 Reisterstown Road, in the City of Baltimore, and particularly the following chattels." Then follows a particular description of

fifteen articles of household furniture and equipment, supplied in writing on the printed form; the only written portion of the above quotation from the mortgage being the designation of the address of the mortgagors.

It is further shown that some of the property belonging to the insured at the time of the fire was property which belonged to them at the time of the execution of the chattel mortgage, and which was moved from the Reisterstown Road dwelling to the Deer Park Road premises; a part thereof being stored in outbuildings which were not destroyed, and the remaining part, except such as was later removed by Mrs. Merrick, being in the Deer Park Road dwelling and destroyed by the fire with other after acquired chattels.

The chattel mortgage was unpaid at the time of the fire; and it must be conceded that under the terms of the policy the plaintiffs are precluded from recovery for the loss of any chattels embraced in the mortgage.

At the trial of the case, the plaintiffs eliminated from their claim the value, as shown by the evidence, of such of the specific chattels as were particularized in the mortgage, regardless of whether they were destroyed in the fire. They further eliminated from their claim the value of all other chattels either removed from the Deer Park Road premises by Mrs. Merrick, or otherwise not in said dwelling at the time of its destruction.

It is the contention of the defendant that the general description found in the printed portion of the chattel mortgage covered all chattels which were in the Reisterstown Road dwelling at the time of the execution of the mortgage, and that, regardless of other contentions why recovery should not be had by the plaintiffs, all chattels which were in the latter dwelling when the mortgage was executed should be eliminated from the claim of loss.

At the outset, therefore, it becomes necessary to consider the legal effect of the general description above quoted. In this connection, section 45 of article 21 of the Code of Public General Laws of Maryland provides: "Any bill of sale of personal property shall be sufficient in form

if it contain the names of the parties, the consideration, a description of the property conveyed, and be signed and sealed by the vendor, and dated." Section 48 of the same article provides: "Bills of sale shall be recorded in the county or city where the vendor or donor resides within twenty days from the date thereof." And section 49 provides: "A mortgage of personal property shall be executed, acknowledged and recorded as bills of sale."

As has been stated, the chattel mortgage now under consideration was not recorded; but, inasmuch as it was valid as between the mortgagors and the mortgagee, and was unpaid at the time of the fire, in our opinion it was sufficient evidence for the elimination of any articles covered by it, destroyed by the fire, which were embraced in the policy. The obvious reason for the insertion of the mortgage clause in the policy was to protect the hazard of the risk by requiring some substantial interest in the insured property to be retained by the insured; and from such viewpoint it makes no difference in what manner the interest has been divested. 3 *Cooley's Briefs on Insurance* (2nd Ed) pp. 2250, 2251; *Rhea v. Planters' Mut. Ins. Assn.*, 77 Ark. 57, 90 S. W. 850; *Madsen v. Farmers' & Merchants' Ins. Co.*, 87 Neb. 107, 126 N. W. 1086.

A careful review of the authorities as to the effect which the particularization of certain chattels set forth in a mortgage has upon a general description, such as found in the instant case, justifies no hard and fast conclusion applicable in every case. In *Hammon on Contracts*, p. 810, sec. 410, it is said: "In modern times, many kinds of contract are drawn up on printed forms in which blanks are left by the printer to be filled in with writing to suit the peculiarities of the particular case. As the printed words are general, being intended for any like occasion, and the written words were specially selected by the parties for the particular case, the latter will govern in case of conflict between them and the former. However, this rule will not be enforced so as to defeat the intention of the parties; and the printed stipulations will therefore give way to those in writing

only so far as it appears that the parties intended to modify or disregard them. And the rule is resorted to only in a case of necessity. To justify an application of it, there must be an irreconcilable inconsistency between the clauses in writing and those in printing. An analogous rule that may be mentioned here is that, where the same number is intended to be expressed both by words and by figures, and there is conflict between the two, the words control." In section 412 it is further stated: "As a rule, the terms of a contract are to be understood in their ordinary and popular sense, rather than in their strict grammatical or etymological meaning. Subject to this rule, words are ordinarily to be understood in their plain and literal meaning; and this is true, even though such a construction may lead to consequences which the parties did not in fact contemplate when they entered into the agreement. Having chosen the words, they are bound by them. In the absence of obscurity or ambiguity, therefore, parol evidence is not admissible to attach a special meaning to words of a common signification by showing that the parties used them in a particular sense." See, also, *Murphy v. City of New York*, 190 N. Y. 413, 83 N. E. 39.

As will be observed from the grant of the chattel mortgage, herein quoted, it embraced all chattels, including household furniture, useful and ornamental, then in the use and possession of the mortgagors, and contained in the Reisterstown Road dwelling in the City of Baltimore, then occupied by them. The very nature of many small articles of household furniture renders them difficult to describe with detailed accuracy. *State v. Maryland Casualty Co.*, 164 Md. 69, 163 A. 856. And it would seem that the description of such articles in the general way set forth in the chattel mortgage, coupled with the use to which they were put, and a definite description of the premises upon which they were located, constitute sufficient facts to make them susceptible of identification as between mortgagor and mortgagee, and to lead to the conclusion that they were intended to be embraced in the

chattel mortgage, notwithstanding that certain of the same articles were later particularized therein. It may be added that the case before us does not represent a contention between the mortgagor and the mortgagee, and that the consideration of the granting clause in the mortgage is solely for the purpose of construing the legal effect of the mortgage in connection with the chattel mortgage provision of the insurance policy.

It is plain that a general description may lead to controversy as to the articles intended to be granted in the mortgage, and the better practice is that such chattels be specifically described; but if a general description is susceptible of being construed as carrying a lien on the property so described in a chattel mortgage, the question of the extent of the lien of the mortgage is one of law; whereas the question as to the identity of the particular articles, as distinguished from chattels which may not be covered by the mortgage and yet intermingled with chattels which are, is a question for the jury. 11 *C. J.* 472.

From what we have said, it follows that such chattels as the jury may find, under proper instruction, were destroyed by fire, and were not covered by either the general or particular descriptions in the mortgage, are the subject of recovery, unless it be shown that the plaintiffs are not entitled to recover because of their failure to comply with other prerequisites embodied in their insurance contract. These latter prerequisites raise questions which may be summarized as follows:

(a) Was there a request by the defendant's adjuster for the production by the plaintiffs of bills or invoices with reference to chattels listed in the plaintiffs' claim?

(b) Does the failure of Thelma C. Merrick to personally sign and swear to the proofs of loss preclude a recovery?

(c) Was there legally sufficient evidence of fraud or false swearing with reference to the proofs of loss?

These will be considered in their respective order.

By the express terms of the policy it is provided that the insured shall "submit to examinations under oath by

any person named by this company, and subscribe the same; and as often as may be reasonably required, shall produce for examination all books of account, bills, invoices, and other vouchers or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this company or its representative, and shall permit extracts and copies thereof to be made."

While it is true that the correspondence in the record shows that the adjuster on one or more occasions called the attention of Edward J. Merrick to this provision in the policy, it is nowhere apparent that at any time he or any other representative of the insurer requested or required the production of such papers in accordance with the provisions of the policy. If the insurer desires the production of bills of purchase, he should demand such with reasonable promptness, and before suit is commenced; but unless such demand has been made, it must necessarily be treated as having been waived. *Farmers' Fire Ins. Co. v. Mispelhorn,* 50 Md. 180; *Mispelhorn v. Farmers' Fire Ins. Co.,* 53 Md. 473; *Mutual Fire Ins. Co. v. Pickett,* 117 Md. 638, 83 A. 1097; *Mutual Fire Ins. Co. v. Owen,* 148 Md. 257, 129 A. 214.

Referring to the second objection of the appellant, we cannot agree with the contention of the appellees that there was a waiver by the insurer of the requirement that Mrs. Merrick united with her husband in signing the proof of loss and in making the affidavit to the same. In the case of *Firemen's Ins. Co. v. Floss,* 67 Md. 403, 10 A. 139, 143, the insured represented a copartnership consisting of three partners, and the proof of loss was signed and sworn to by one of them alone. One of the conditions of the policy involved in the case was that the parties insured were required, within a reasonable time, to render a full and particular account of their loss, and such statement was required "to be signed by their own hands, and verified by their oath or affirmation." In passing upon this phrase of the case, the court said: "Whether this provision requires, in all cases and under all circumstances, each and every person interested in a loss cov-

ered by the policy to sign and swear to the preliminary statement of loss, is a question not free of difficulty, but which we need not decide in this case; as we are clearly of opinion that the right to take advantage of any defects or irregularities in such preliminary statement or proofs of loss has been waived by the defendants." It is apparent from the facts shown by the record in this case that objection was promptly made by the adjuster, as representing the insurer, to the failure of Mrs. Merrick to be made a party to the proof of loss; and it cannot be said, under the facts in the case, that a waiver of any rights of the company in this respect was effected. The question, therefore, resolves itself into the proposition of whether or not the proof of loss, as made and sworn to by the husband on his own behalf, and on behalf of his wife as her agent, can be construed to meet the requirements of the policy.

The furnishing of a proof of loss is a preliminary step by the insured in the collection of benefits accruing under an insurance policy; and its chief purpose is to acquaint the insurance company with certain facts and circumstances relative to the loss, forming a basis for further steps to be taken by the company, ranging from full settlement to absolute repudiation of liability. Substantial compliance with the policy requirements for the submission of this proof has been held sufficient. 26 *C. J.* 376. "Where insured acts in good faith and discloses such information as the insurer requests, the provision of the policy relative to proof of loss should be liberally construed in aid of the indemnity contemplated by the parties." *Bingell v. Royal Ins. Co.*, 240 Pa. 412, 87 A. 955. "A liberal and reasonable construction of the stipulations of the contract which prescribe the formal acts on the part of the insured, necessary to the recovery of the loss, is sanctioned and required by the rules of law." *McNally v. Phoenix Ins. Co.*, 137 N. Y. 389, 33 N. E. 475, 478.

In the present case the property mentioned in the policy as being insured consisted mainly of household furnishings belonging to either the husband or the wife, or both,

and the policy was in their joint, names. She was absent from home at the time of the fire, and her whereabouts unknown to her husband for some time thereafter. All correspondence of the company with the insured relating to the loss was directed to the husband. He signed, first, his own name to the proof of loss, and followed it by signing that of his wife "Thelma C. Merrick, per Edward J. Merrick." Under these circumstances, is it unreasonable to hold that the instrument, so far as indicating the source whence it came, as being one competent for the furnishing of necessary information, substantially satisfied the requirements of a proof of loss, bearing in mind the purpose for which such a document is required? If a mortgagor and mortgagee are jointly insured, either may furnish proofs. 26 C. J. 369. If a wife is left in charge of insured property and a loss occurs, and the husband is absent and his whereabouts unknown, the wife may make proof of loss by implied appointment. *Evans v. Ins. Co.*, 130 Wis. 189, 109 N. W. 952. In *Lumbermen's Ins. Co. v. Bell,* 166 Ill. 400, 45 N. E. 130, the policy on a mill property owned by a widow was in the name of her deceased husband, and she paid the premium, but conducted all business with the company through her son. After a fire, the proof of loss was submitted by the mill superintendent, she being absent at the time; and it was held that, he being her agent, the proof was sufficient. And in *Swan v. Liverpool Ins. Co.*, 52 Miss. 704, it was held that the insurer cannot question the agent's authority where, as such agent, he had effected the insurance, paid the premium, received the policy, and in every manner been recognized as agent by the insurer.

Considering the facts and circumstances peculiar to this case, and guided further by the principle that the law does not favor forfeitures *(McMaster v. New York Life Ins. Co.,* 183 U. S. 25, 22 S. Ct. 10, 46 L. Ed. 64), we conclude that the instrument executed in the manner indicated contained the necessary prerequisites of a valid proof of loss, and the fact that the wife did not personally sign the same, in the absence of any showing of fraud,

constituted no sound basis for its repudiation by the company.

Turning now to the question of the legal sufficiency of the evidence of fraud or false swearing with reference to the value of, or actual damage in fact to, any of the chattels listed in the proofs of loss as having been totally destroyed, it should be borne in mind that fraud is never presumed, and that the burden of proof is upon the insurer to establish such fact.

The facts in the instant case are in a class comparable with no other case which we have been able to find. There was testimony tending to show that the husband was deserted by his wife but six days before the fire; that she secretly abandoned him, and removed certain articles jointly belonging to the insured; and the element of fraudulent design and collusion is removed by the apparent fact that she followed her abandonment with a suit for divorce from her husband. He was living alone at the time of the fire, employed at night at a point some distance from his home. His testimony is to the effect that he was totally ignorant of the whereabouts of his wife during the short interval between the date of her departure and the fire, and that he had no knowledge that she had removed anything from the premises when he made up the original and subsequent inventories of the chattels which he swore to as having been destroyed by the fire. In this statement he was corroborated by his wife, in so far as her abandonment of him and her removal of certain chattels from the premises was concerned. Based upon his recollection of the cost price of the numerous household articles destroyed, he fixed their valuation.

To constitute "false swearing" within the meaning of the contract of insurance, so as to render the policy void, the statement so made must not only be untrue, but it must be shown that it was knowingly and intentionally stated with knowledge of its untruthfulness, or that it was so stated as a truth when the party did not know it to be true, and had no reasonable grounds for believing it to be true, and was so made with the purpose to defraud.

Under all the facts in this case, we cannot conclude that the element of fraud has been established. *Planters' Mut. Ins. Co. v. Deford,* 38 Md. 382; *German Union Fire Ins. Co. v. Cohen,* 114 Md. 130, 78 A. 911.

There are eight exceptions found in the record, seven of which deal with matters of evidence, and the last is with reference to the ruling of the court on the prayers. In the view we have taken of the case, and inasmuch as none of the exceptions to the rulings upon evidence were pressed by the appellants in this court, it becomes unnecessary to discuss them.

The only granted prayer in the case, which was offered by the plaintiffs, was an instruction to the jury that, if they found their verdict for the plaintiffs, in estimating the damages they should find the actual cash value of the property destroyed at the time of the fire, as given in the evidence; and if they found the whole loss of the plaintiffs exceeded the amount of the insurance on the property, as set forth in the policy mentioned in the evidence, then their verdict should be for the full amount insured, less the actual cash value of such goods destroyed in the fire *as they should find were encumbered by a chattel mortgage,* and less also such amount as they found was owing by the plaintiffs on account of any of the destroyed goods not fully paid for; and in their discretion the jury might allow interest on whatever sum they found to be due from the defendant, *from such time as they found the same became due and payable.*

And it is urged by the defendant that the prayer is erroneous, in that it submitted to the jury the following questions of law: (1) What property was covered by the chattel mortgage, and (2) the date from which interest might be calculated on any sum found to be due the plaintiffs, if any? Assuming, however, that the prayer did submit these questions of law to the jury, the record does not show that any special exception was filed to the prayer on those grounds in the trial court, and it follows that they cannot be considered on this appeal. Code, art. 5, sec. 10.

No objection to the rulings on the defendant's prayers was specially stressed in this court, and since the law of the case was fairly stated in the plaintiffs' granted prayer, it is enough to say that we find no reversible error on those rulings.

The judgment appealed from will therefore be affirmed.

*Judgment affirmed, with costs to the appellees.*