ROYAL INDEMNITY COMPANY, a body
corporate of the State of New York

v.

Richard Charles WINGATE et al.

Civ. No. 70–886–B.

United States District Court,
D. Maryland.

Jan. 24, 1973.

Robert L. Karwacki, Baltimore, Md.,
for plaintiff.

Leonard H. Wonneman, Baltimore,
Md., for defendants Frank Richard
Kursch and Helen M. Kursch.

Dwight C. Stone, Baltimore, Md., for
defendant Aetna Life and Casualty Co.

G. Raymond Valle, Asst. Atty. Gen.,
Glen Burnie, Md., for defendant Unsat-
isfied Claim and Judgment Fund.

BLAIR, District Judge.'

This declaratory judgment action
arises out of a suit now pending in the
Superior Court of Baltimore City.
Kursch v. Wingate, Docket 1968, Folio
774, File No. 112110. In that case, dam-
ages are claimed for injuries sustained
by Mr. Kursch when a truck operated by
him was struck by a Hertz rental car al-
leged to have been negligently operated
by Wingate. At the time of the acci-
dent, there was in effect a policy of lia-
bility insurance issued by Royal Indem-
nity providing coverage to Hertz and
permissive users. After investigation,
however, Royal Indemnity concluded
that Wingate was not an "insured"

within the terms of the policy. It then commenced this action in federal court seeking a declaratory judgment that the policy did not provide coverage for damages arising from the accident and seeking to enjoin the plaintiffs in the suit pending in the Superior Court of Baltimore City from prosecuting any suit against it arising out of the accident. The suit pending in the Superior Court of Baltimore City has been held in abeyance awaiting a declaratory judgment in this case as to whether coverage exists.

Jurisdiction is founded upon diversity of citizenship, 28 U.S.C. § 1332, and the declaratory judgment statute, 28 U.S.C. §§ 2201, 2202.

For the most part, the facts are not in dispute and were placed before the court by way of stipulation. The stipulated facts were supplemented by evidence adduced at a short bench trial. On March 19, 1968, Gary H. Mooney rented a 1968 Ford from Hertz at Friendship Airport in Maryland. This car, as well as other Hertz cars, was covered by a liability insurance policy issued by Royal Indemnity. Mooney, without first obtaining the express permission of Hertz, allowed Wingate to operate the car. During the period of the rental agreement, the car driven by Wingate with Mooney as a passenger collided with a truck owned by the A. S. Abell Company. An investigation was undertaken by Royal Indemnity and a claim for property damage was paid. Additionally, as a result of this accident, the driver of the truck, Frank Richard Kursch, sustained some injuries. As a result of these injuries, Kursch received an award from the Maryland Workmen's Compensation Commission which was paid by Aetna Life and Casualty Co., the workmen's compensation carrier for his employer. Kursch and his wife thereafter brought suit in the Superior Court of Baltimore City against Wingate to recover damages arising from the accident. Royal Indemnity through its attorney answered the declaration filed in the Superior Court of Baltimore City and conducted some discovery proceedings in defense of the case. Subsequently, but before trial, Royal Indemnity took the position that Wingate was not covered under the policy and sought a declaratory judgment to that effect in this court.

Royal Indemnity relies on the "omnibus clause" of the policy and the Hertz rental agreement with Mooney in support of its contention. The omnibus clause affords coverage to Hertz and anyone using the car with its permission.[1] The rental agreement permits use of the car by Mooney, his employer, his employees while engaged in the usual course of their employment and any member of Mooney's immediate family who was both a qualified driver and over 21 years of age.[2] Royal Indemnity claims that Wingate did not fall within any of the permissive user classifications and, accordingly, seeks a declaration of noncoverage.

Aetna Life and Casualty paid approximately $3,000 to Kursch in benefits under the workmen's compensation award and was permitted to intervene in this suit because it had become subrogated to

---

1. The "omnibus clause" provides:
   With respect to the insurance for bodily injury liability and for property damage liability the unqualified word "insured" includes the named insured . . . and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured . . . or with [his] permission . . . .

2. The rental agreement provides in part:
   Under no circumstances shall vehicle be used, operated or driven . . . by any person other than Customer, except (1) a member of Customer's immediate family; (2) Customer's employer; (3) an employee of Customer in the course of such employee's regular and usual employment by Customer; PROVIDED that any such person specified in (1), (2) or (3) must have first obtained Customer's permission, and PROVIDED FURTHER that no person, including Customer, shall operate or drive vehicle unless such person is a qualified licensed driver and, if a member of customer's immediate family, is 21 years of age or older.

the rights of Kursch to the extent of such award. Annotated Code of Maryland, Art. 101, § 58. Aetna and Kursch contend that in the absence of sufficient proof to permit this court to conclude that Wingate was not a permissive user within the terms of the omnibus clause and the rental agreement, the policy provides coverage for damages arising from the accident. They also contend that since Mooney was riding in the car at the time of the accident he was either the principal of or had control over Wingate so that under the provisions of the omnibus clause and the rental agreement he should be deemed to be the operator of the car. They further contend that Royal Indemnity's conduct in undertaking representation of Wingate in the Superior Court suit and in settling a property damage claim estops it from denying that Wingate was an insured under the policy. As interesting as the latter two contentions may be, they will not be reached because in the court's view consideration of the first contention proved dispositive of the case.

■ To the despair of Royal Indemnity no doubt, Mooney and Wingate have turned out to be shadowy figures in the night. Who they were, where they lived, for whom they worked, in what business they were engaged, and how each was related to the other if at all seems never to have been determined. Thus beyond the facts presented by stipulation and recited above, there is a paucity of evidence to give substance to the shadows and their relationships. For this reason, it becomes critical to determine which party has the burden of proof. To this end, it should be noted that Royal Indemnity is the plaintiff and upon stated allegations seeks certain relief. However, in a case of this nature, the burden of proof should not be mechanically placed on the doorstep of the plaintiff simply because it is the one seeking relief. To this court, it would seem unwise to apply any general formulation with respect to the burden of proof but rather to address such a question from the standpoint of which party

must lose where there is a failure of proof. *See,* Reliance Life Ins. Co. v. Burgess, 112 F.2d 234 (8th Cir.), cert. denied, 311 U.S. 699, 61 S.Ct. 137, 85 L. Ed. 453 (1940).

■ Appleman, one of the foremost authorities on insurance law, states that the driver of the car is presumed to be operating it with the owner's consent and that this presumption remains in effect until rebutted by substantial evidence to the contrary. 21 Appleman, Insurance Law and Practice, § 12274 (1962). *See also, e. g.,* Cherry v. Mitosky, 353 Pa. 401, 45 A.2d 23 (1946); Fox v. Employers' Liability Assurance Corp., 239 App.Div. 671, 268 N.Y.S. 536 (1934). Such a presumption would seem eminently reasonable and this court is not prepared to say that it would be rejected by the Court of Appeals of Maryland.

■ At the time of this accident, the Annotated Code of Maryland, Art. 66½, § 117(d), provided:

> *Allowing another to drive without permission of owner.*—Whenever a person rents from another a motor vehicle without a driver, it shall be unlawful for the person so obtaining the use of said motor vehicle to permit another person to operate the said motor vehicle without first securing the permission of the person owning the said motor vehicle.

Subsection (e) made a violation of subsection (d) a misdemeanor punishable by fine. Thus, if in this case Wingate, while operating the Hertz vehicle, was not a permissive user within the terms of the rental agreement, Mooney's allowing him to operate that vehicle would have been a violation of Art. 66½, § 117, and Mooney would be guilty of a misdemeanor punishable by fine. It is axiomatic that a court will not presume one to have committed an act in violation of law which is punishable as a crime. *See,* Williams v. United Services Automobile Ass'n., 250 F.Supp. 502 (N. D.Miss.1965); *cf.* United States Fire

Ins. Co. v. Merrick, 171 Md. 476, 190 A. 335 (1937).

■ Applying these principles to the present case, the court is of the opinion that for either or both of the foregoing reasons Wingate is presumptively a permissive user under the omnibus clause and the rental agreement and it is incumbent upon Royal Indemnity to rebut these presumptions by substantial evidence in order to defeat coverage under the policy in question.

Two Maryland cases are of assistance also in assessing the burden that Royal Indemnity has in the instant case in seeking a declaration that there was no coverage under the policy. In National Life Insurance Co. v. Fleming, 127 Md. 179, 96 A. 281 (1915), the court was called upon to determine whether the loss in question fell within the terms of the policy. The critical issue was whether the insured was killed while attempting to disembark a cable car in San Francisco. If her death was caused while leaving the cable car, there was no coverage under the policy. If her death occurred from other causes while a passenger on the cable car, the company was liable on the policy. The court held in that case that the burden of proving the nonexistence of coverage rested on the insurance company. A similar result was reached by the Fourth Circuit Court of Appeals in Phoenix Savings and Loan, Inc. v. Aetna Casualty & Surety Co., 427 F.2d 862 (4th Cir. 1970). That case involved suit on a surety bond and one of the issues was whether certain persons were directors of the company or merely employees. If they were employees, there was coverage under the policy but if they were directors no coverage was afforded. This court reads National Life and Phoenix as placing the burden on the insurer in this case to prove the facts necessary to establish a lack of coverage. Both of these cases are analogous to the situation in which the driver of a car is not

the owner. If the car was operated with the permission of the owner, coverage is present but if the use was unauthorized then no coverage exists. If there is a presumption that the driver had the consent of the owner, it would be necessary for the insurance company to rebut this presumption. This would be another way of saying that the insurance company must prove the facts which would establish a lack of coverage—the holding of National Life Insurance Co. v. Fleming and Phoenix Savings and Loan, Inc. v. Aetna Casualty & Surety Co. For the foregoing reasons, this court concludes that under the facts here present the Maryland law would presume that the driver of the car is operating with the owner's consent. Consequently, Royal Indemnity must shoulder the burden of showing by substantial evidence that the presumption should fall and the car was being operated without the permission of the owner.

If the court assumes, without deciding that only those persons expressly authorized by Hertz to operate the rented cars are "insured", Royal Indemnity must prove that Wingate was not a member of Mooney's immediate family, that he was not Mooney's employer or that he was not employed by Mooney. Royal Indemnity has sought to meet this burden but its evidence is scant. It introduced the testimony of its witness, Janice Alark, a police report made by the officer investigating the accident in question, and a copy of the Hertz rental agreement. The testimony of Miss Alark and the police report were objected to as inadmissible on the grounds that they were irrelevant and hearsay evidence.[3] Assuming and thus accepting the evidence as admissible, it is of small help to Royal Indemnity.

Miss Alark, who was a passenger in the car driven by Wingate at the time of the accident, testified that she had known Wingate for approximately six months preceding the accident. She fur-

3. Neither Mooney nor Wingate are parties to this action. Mooney because he was not named and Wingate because he was not served.

ther stated that she had been told that Mooney had just arrived from California; that she believed that Wingate was unemployed; that she did not know where Wingate resided; and that she did not know if Mooney and Wingate were related. The police report was introduced to show that at the time of the accident Wingate claimed that he was self employed and that Mooney and Wingate gave different addresses for their residence. The Hertz rental agreement shows that Mooney used an identification card of a company with the name of "Quartet Films" at the time he rented the car.

From this evidence, Royal Indemnity would have the court conclude that Wingate was neither the employer nor employee of Mooney nor was he a member of Mooney's immediate family. To the court, however, the evidence is plainly insufficient to reach such a conclusion. Other than the fact that Mooney and Wingate used different last names there was no evidence to show that they were not immediately related. The court takes judicial notice of the fact that for a variety of reasons persons immediately related may have different last names. Similarly, even if the court accepts Royal Indemnity's argument that the reference to "Quartet Films" on the Hertz rental agreement indicates that Mooney worked for Quartet Films it is clear that Royal Indemnity has not excluded the possibility that Wingate, who claimed to be self employed, was self employed under the name of Quartet Films and was in fact Mooney's employer. Stated otherwise, Royal Indemnity's policy covered Hertz and anyone to whom Hertz gave permission to use the car. Under the rental agreement, Hertz gave permission to Mooney and to Mooney's employer, to Mooney's employees while engaged in their usual course of employment and to any member of Mooney's immediate family who was both a qualified driver and over 21 years of age. Royal Indemnity has fallen short of proving that Wingate was not a permissive user under the terms of the agreement.

Accordingly, the court holds that Royal Indemnity had the burden of proving that Wingate was not an insured at the time of the accident and that because it failed in such proof the policy afforded coverage to Wingate at the time of the accident. Therefore, Royal Indemnity is not entitled to the declaration or injunction that it seeks. Counsel may submit a form of judgment declaring that coverage was in effect and denying the relief that Royal Indemnity seeks.